GOLDEN EAGLE ARCHERY, INC.

v.

Ronald JACKSON.

No. 01–0007.

Supreme Court of Texas.

Argued Oct. 16, 2002.

Decided Sept. 11, 2003.

Jacqueline M. Stroh, Crofts & Callaway, P.C., San Antonio, Lipscomb Norvell, Jr., Benckenstein Norvell & Nathan, Beaumont, for petitioner.

John Cash Smith, Bush, Lewis & Roebuck, George Barron, Orange, David W. Holman, Holman & keeling, P.C., Houston, for respondent.

Justice OWEN delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice ENOCH, Justice SMITH, and Justice WAINWRIGHT joined.

In this case, we resolve how courts of appeals are to conduct a factual sufficiency review when 1) a jury is permitted to award damages for elements that somewhat overlap, 2) the jury is instructed not to duplicate an award for any particular loss, and 3) the jury awards no damages or

damages that are allegedly inadequate for an element that could overlap with another.

Because the court of appeals in this case did not properly apply the standard of review set forth in *Pool v. Ford Motor Co.*,[1] and because this Court has never before articulated the standard for factual sufficiency review when evidence pertains to more than one category of damages, we reverse the court of appeals' judgment[2] and remand this case to that court for another factual sufficiency review.

## I

This is the second time that this case has been before our Court. In our prior decision,[3] we considered alleged juror misconduct and whether Texas Rule of Civil Procedure 327(b) and Texas Rule of Evidence 606(b), limiting proof of juror misconduct, are constitutional. We held that there was no competent evidence of juror misconduct and that Rules 327(b) and 606(b) neither deprive litigants of a fair trial under the Texas Constitution nor fail to afford litigants due process.[4] We remanded the case to the court of appeals to consider issues it had not reached.[5] On remand, the court of appeals held that the jury's failure to award any damages for a category of physical impairment was so against the great weight and preponderance of the evidence that the zero damages award was manifestly unjust and required a new trial.[6] Our focus is on that issue.

Ronald Jackson received a compound hunting bow manufactured by Golden Eagle Archery as a gift from his wife. When she presented it to him, he attempted to demonstrate how it is used. The bow went out of control, and the metal rod that separated the bow string from the cables struck Jackson in the eye. He bled profusely, required emergency treatment at one hospital, was transferred to another hospital for additional treatment, and spent ten days there. He suffered broken bones around the orbit of his eye, some loss of vision, a ruptured sinus, and a broken nose. Upon discharge he was instructed to limit activities to avoid straining or lifting. About a month later, he underwent surgery to repair the orbital fractures and other reconstructive surgery and was hospitalized an additional three days. Jackson was unable to work for about two months after the date of the accident with the bow. He returned to work thereafter, but has some permanent impairment to his eye and vision, and some disfigurement.

Jackson sued Golden Eagle, alleging that the bow was defectively designed and marketed. The jury failed to find a design defect, but found that Golden Eagle did not give adequate warnings of the product's danger. A single damage question was submitted in which the jury was permitted to award damages in six separate categories. They awarded $25,393.10 for medical care, $2,500 for physical pain and mental anguish, $2,500 for "physical impairment of loss of vision," $0 for "physical impairment other than the loss of vision," $1,500 for disfigurement, and $4,600 for loss of earnings in the past.

The trial court rendered judgment on the verdict in favor of Jackson, and Jackson appealed. As we have already de-

---

**1.** 715 S.W.2d 629, 635 (Tex.1986).

**2.** 29 S.W.3d 925.

**3.** *Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 364 (Tex.2000).

**4.** *Id.* at 375.

**5.** *Id.*

**6.** 29 S.W.3d at 929.

scribed above, the court of appeals reversed the trial court's judgment after concluding that two of our rules of procedure were unconstitutional. We reversed the court of appeals and remanded other, unresolved issues to that court. Following that remand, the court of appeals considered Jackson's contention that he was entitled to a new trial because the jury's failure to award any damages for "physical impairment other than loss of vision" was against the great weight and preponderance of the evidence. Jackson also contended that the jury's awards for physical pain and mental anguish, physical impairment because of loss of vision, and disfigurement were inadequate and required a new trial. The court of appeals agreed with Jackson regarding the award of no damages for physical impairment other than loss of vision. It remanded the case for a new trial and therefore did not reach Jackson's other issues on appeal.

Golden Eagle filed a petition for review in our Court. We granted that petition to consider the proper standard to be applied in conducting a factual sufficiency review of a jury's failure to award any damages for physical impairment.

## II

■■■ Although this Court does not have jurisdiction to conduct a factual sufficiency review, we do have jurisdiction to determine whether a court of appeals has applied the correct standard in conducting a factual sufficiency review.[7] It is a familiar principle that in conducting a factual sufficiency review, a court must not merely substitute its judgment for that of the jury.[8] It is an equally familiar principle that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony.[9]

We held in *Pool v. Ford Motor Co.* that in order for this Court to conduct a meaningful review of whether a court of appeals has correctly applied the factual sufficiency standard, courts of appeals "should, in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias."[10] Pointedly, we added, "[f]urther, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. It is only in this way that we will be able to determine if the requirements of *In re King's Estate* have been satisfied."[11] We held in *In re King's Estate* that a court of appeals must

consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this, regardless of whether the record contains some "evidence of probative force" in support of the verdict.... The evidence supporting the verdict is to be weighed along with the

---

7. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634–35 (Tex.1986); *see also Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988) (plurality opinion); *Id.* at 145 (Phillips, C.J., concurring); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

8. *Pool*, 715 S.W.2d at 635.

9. *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 866 (Tex.1982).

10. *Pool*, 715 S.W.2d at 635.

11. *Id.*

other evidence in the case, including that which is *contrary to the verdict.*[12]

Before a court can properly conduct a factual sufficiency review, it must first have a clear understanding of the evidence that is pertinent to its inquiry. The starting point generally is the charge and instructions to the jury. In this case the jury was instructed and answered as follows:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Ronald Jackson for his damages, if any, that resulted from the injury in question?
>
> Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.
>
> Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Ronald Jackson.
>
> Answer in dollars and cents for damages, if any, that were sustained in the past and that in reasonable probability will be sustained in the future, unless otherwise instructed.
>
> Answer:

| | | |
|---|---|---|
| a. | Medical care | $25,393.10 |
| b. | Physical pain and mental anguish | $ 2,500.00 |
| c. | Physical impairment of loss of vision | $ 2,500.00 |
| d. | Physical impairment other than loss of vision | $ 0 |
| e. | Disfigurement | $ 1,500.00 |
| f. | Loss of earnings in the past | $ 4,600.00 |

The only definition that was given regarding this question was a definition of "injury" that said: " 'Injury' means damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by reason of such damage or harm." "Physical impairment" was not defined, nor were any of the other listed categories of damages.

Jackson does not challenge the jury's findings regarding medical care and loss of past earnings. The jury awarded the full amounts he requested in those categories. It is the non-economic damages that are at issue. The court of appeals addressed only the jury's failure to award damages for "Physical impairment other than loss of vision." The court of appeals concluded that the failure to award damages in this category was against the great weight and preponderance of the evidence because "Jackson sustained multiple fractures to his face; four of the seven bones that make up the orbit of the eye were fractured.... [H]e sustained a ruptured sinus and a broken nose.... [H]e remained [in the hospital] for ten days.... Thirty-seven days elapsed from the date of the accident ... until the injuries to his face were repaired," and he had headaches up until the time of trial.[13]

Jackson's arguments in this Court focus more directly on the "loss of enjoyment of life" he suffered while hospitalized and recuperating. Specifically, Jackson's brief says:

> The injury to [Jackson's] orbital area, nose and sinuses resulted in his hospitalization for ten days immediately following the accident and then for another three days for surgery to repair the broken orbital bones, nose and ruptured sinus. These objective injuries did not allow [Jackson] to enjoy any of his normal life activities during the time of his

---

**12.** 244 S.W.2d at 661.

**13.** 29 S.W.3d at 929.

hospitalizations. Moreover, the pain medication prescribed for Jackson kept him "zombied out" most of the time between the first and second hospitalizations. The normal life activities impaired by these injuries include enjoyment of home life activity with family, socializing with friends such as he was doing when he was injured, enjoying the bow which he had looked forward to having and the bow hunting season which he was wanting to do and had brought on the desire for the bow in the first place.... The disability of [Jackson] was obvious form [sic] the injuries themselves and did not require Jackson to produce evidence to show the tasks that he could not do during the periods of his hospitalizations and the time in between the hospital stays.... A person that is hospitalized with traumatic injuries cannot engage (at least for the time of hospitalization) in his or her normal life activities outside of work and consequently suffers loss of physical impairment [sic].[14]

In reviewing the record evidence, the court of appeals generally focused on physical injuries while Jackson focuses on what are sometimes called "hedonic damages." [15] Our first inquiry is to determine whether the evidence recounted by the court of appeals and relied upon by Jackson pertains to "physical impairment other than loss of vision," to some other category of damage that was submitted to the jury, or both. For the reasons we consider below, we conclude that this evidence pertains to more than one of the categories that were submitted, particularly in light of the fact that neither "physical impairment" nor any of the other damage elements were defined. Our second inquiry is how a factual sufficiency review should be conducted given that overlapping elements of damages were submitted and the jury was instructed not to award damages for the same loss more than once.

### III

When someone suffers personal injuries, the damages fall within two broad categories—economic and non-economic damages. Traditionally, economic damages are those that compensate an injured party for lost wages, lost earning capacity, and medical expenses. Non-economic damages include compensation for pain, suffering, mental anguish, and disfigurement. "Hedonic" damages are another type of non-economic damages and compensate for loss of enjoyment of life.[16]

This Court has never considered the historical origins of the term "physical impairment" or its parameters in any detail.

14. Ronald Jackson's Brief on the Merits at 11–12, 13, 18 (record citations omitted).

15. The purported origin of the term "Hedonic damages" is discussed in *Loth v. Truck-A-Way Corp.*, 60 Cal.App.4th 757, 70 Cal. Rptr.2d 571, 573 n. 1 (1998).

16. *See Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 803 (Tex.1989); *see also Mo. Pac. R.R. Co. v. Handley*, 341 S.W.2d 203, 205 (Tex.Civ.App.-San Antonio 1960, no writ) (concluding that damages for "mental anguish, severe and continued pain and suffering, disfigurement, embarrassment and inability to live a normal life" were not excessive when the plaintiff's fingers had been amputated and he was unable to grip anything or hunt and fish as he had in the past); *but see Ramos v. Kuzas*, 65 Ohio St.3d 42, 600 N.E.2d 241, 243 (1992) (holding that " '[h]edonic losses' include the inability to perform the plaintiff's usual specific activities which had given pleasure to this particular plaintiff, such as playing golf, dancing, bowling, playing musical instruments, and engaging in specific outdoor sports," which must be distinguished from "[b]asic losses" or "disability losses" that "include the inability to perform the basic mechanical body movements of walking, climbing stairs, feeding oneself, and driving a car").

But Texas courts, including this one, have long recognized that "physical impairment" or similar concepts could encompass both economic and non-economic damages.[17] Early Texas decisions seemed to recognize that while an injured party was entitled to a full recovery, care should be taken to prevent a double recovery when instructions are given to a jury. Courts of appeals have been conscious of these concerns. In *Robinson v. Minick*, the court observed, "[t]he intermediate appellate courts have shown extreme caution in reviewing claims for physical impairment because of justified concern to prevent a double recovery."[18] That same court lamented, "[o]ur review of this difficult area of the law is hampered by the absence of supreme court authority."[19]

The only guidance our Court has given since our early decisions was in *Estrada v. Dillon.*[20] There we considered whether a court of appeals had properly conducted a factual sufficiency review of evidence of damages due to physical impairment.[21] The jury had awarded damages for past physical pain and mental anguish, past loss of earnings, and past medical care. The jury did not award any damages for future physical pain and mental anguish, future medical care, future loss of earning capacity, past or future physical impairment, or past or future disfigurement.[22] The court of appeals reversed the trial court's judgment and remanded the case, concluding that the failure to award any damages for past physical impairment required a new trial.[23] The court of appeals did not reach the plaintiffs' contention that the failure to award damages for other elements also required reversal.[24] We found no error in the factual sufficiency review, but we did hold that the court of appeals erred in remanding for a new trial solely on damages.[25] We did not analyze in any detail the history of physical impairment, but instead focused on whether a jury must award damages for past physical impairment if there was objective evidence of an injury.[26] We "assumed" that the defendants' definition of physical impairment was correct. We said: "Assuming that [the defendants] are correct that evidence of physical impairment must focus on restriction of activities caused by the injury, the court of appeals' analysis in this case is not inconsistent with that focus. The court of appeals did not hold that proof of objective injury alone establishes physical impairment."[27] Today, we examine more carefully what evidence relates to physical impairment, the potential for double recov-

---

**17.** *See Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880, 883–84 (1948); *Int'l & G.N. Ry. Co. v. Butcher,* 98 Tex. 462, 84 S.W. 1052, 1053 (1905); *Int'l–Great N. R.R. Co. v. King,* 41 S.W.2d 234, 236 (Tex. Comm'n App. 1931, holding approved); *see also Dupont v. Preston,* 9 P.3d 1193, 1197 (Colo.Ct.App.2000) (physical impairment can result in pecuniary or nonpecuniary harm).

**18.** 755 S.W.2d 890, 893 (Tex.App.-Houston [1st Dist.] 1988, writ denied); *see also Rosenboom Mach. & Tool, Inc. v. Machala,* 995 S.W.2d 817, 825 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

**19.** 755 S.W.2d at 893.

**20.** 44 S.W.3d 558 (Tex.2001).

**21.** *Id.* at 561.

**22.** *Id.* at 560.

**23.** *Estrada v. Dillon,* 23 S.W.3d 422, 427–28 (Tex.App.-Amarillo 2000), *rev'd in part,* 44 S.W.3d 558 (Tex.2001).

**24.** *Id.* at 427.

**25.** *Estrada,* 44 S.W.3d at 562 (citing Tex.R. App. P. 44.1(b)).

**26.** *Id.* at 561.

**27.** *Id.*

ery, and how a factual sufficiency review should be conducted.

The courts of appeals have recognized that physical impairment can encompass economic as well as non-economic damages.[28] A number of those courts have attempted to separate physical impairment from economic damages by defining physical impairment to exclude any impediment to earning capacity and also to separate physical impairment from the non-economic damages of pain and suffering. Over the last thirty years, a number of courts of appeals have said,[29] as the court of appeals in the case before us today said, that "[t]o recover damages for physical impairment, a plaintiff must prove 'that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated.'"[30]

The genesis of this definition of "physical impairment" is not entirely clear. And the courts of appeals have not been entirely congruent in applying that term to particular facts. Most of the Texas cases that have addressed physical impairment have concluded either explicitly or implicitly that the injury must be permanent and affect physical activities.[31] There are

28. *See, e.g., Green v. Baldree,* 497 S.W.2d 342, 350 (Tex.Civ.App.-Houston [14th Dist.] 1973, no writ) (observing "[i]t would not be proper in every personal injury case to instruct the jury that it might consider loss of earning capacity, pain and physical impairment as separate elements of plaintiff's damage," but concluding that "in almost all of such cases, if not all of them, the defendant would be entitled, on request, to have the court submit a special instruction that would be calculated to prevent the jury from allowing a double recovery"); *Santa Rosa Med. Ctr. v. Robinson,* 560 S.W.2d 751, 760 (Tex.Civ.App.-San Antonio 1977, no writ) (reviewing charge that included physical pain and mental anguish, loss of earnings, and physical impairment, concluding that "[t]here is clearly a possibility of some overlapping and blending in the issues as submitted," but finding no reversible error); *Mikell v. La Beth,* 344 S.W.2d 702, 709 (Tex.Civ.App.-Houston 1961, writ ref'd n.r.e.) (concluding that when physical impairment and diminished capacity to work and earn money were both submitted, "there was no necessary duplication of elements of damage.... But if we are mistaken in this, we are of the opinion that appellants' [point of error] nevertheless must be overruled because the objection made to the issue in the Trial Court did not specifically point out that there was any duplication in the elements of damage as submitted.").

29. *Blankenship v. Mirick,* 984 S.W.2d 771, 777 (Tex.App.-Waco 1999, pet. denied); *Peter v. Ogden Ground Servs., Inc.,* 915 S.W.2d 648, 650 (Tex.App.-Houston [14th Dist.] 1996, no

writ); *Sharm, Inc. v. Martinez,* 900 S.W.2d 777, 784 (Tex.App.-Corpus Christi 1995, judgm't vacated); *Pipgras v. Hart,* 832 S.W.2d 360, 366 (Tex.App.-Fort Worth 1992, writ denied); *Lawson–Avila Constr., Inc. v. Stoutamire,* 791 S.W.2d 584, 599 (Tex.App.-San Antonio 1990, writ denied); *Tri–State Motor Transit Co. v. Nicar,* 765 S.W.2d 486, 493 (Tex.App.-Houston [14th Dist.] 1989, no writ); *Robinson v. Minick,* 755 S.W.2d 890, 893 (Tex.App.-Houston [1st Dist.] 1988, writ denied); *S. Pac. Transp. Co. v. Harlow,* 729 S.W.2d 946, 950 (Tex.App.-Corpus Christi 1987), *writ dism'd, improvidently granted,* 745 S.W.2d 320 (Tex.1988); *Landacre v. Armstrong Bldg. Maint. Co.,* 725 S.W.2d 323, 324 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.); *Baker Marine Corp. v. Herrera,* 704 S.W.2d 58, 62 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.); *Allen v. Whisenhunt,* 603 S.W.2d 242, 244 (Tex.Civ.App.-Houston [14th Dist.] 1980, writ dism'd); *Browning v. Paiz,* 586 S.W.2d 670, 675 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.); *French v. Grigsby,* 567 S.W.2d 604, 607 (Tex.Civ.App.-Beaumont), *writ ref'd n.r.e.,* 571 S.W.2d 867 (Tex.1978); *Santa Rosa Med. Ctr.,* 560 S.W.2d at 760; *Green,* 497 S.W.2d at 350.

30. 29 S.W.3d at 928 (quoting *Blankenship,* 984 S.W.2d at 777).

31. *See Rosenboom Mach. & Tool, Inc. v. Machala,* 995 S.W.2d 817, 826–28 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *Blankenship,* 984 S.W.2d at 778 (concluding that

some decisions, though, that seem to have concluded that temporary injuries can give rise to physical impairment.[32] In *Estrada v. Dillon,* this Court seems to have agreed with a court of appeals that evidence of temporary injuries could amount to evidence against the great weight and preponderance when a jury failed to award any damages for past physical impairment.[33]

The courts of appeals are in far greater disagreement, however, on whether "physical impairment" encompasses hedonic damages, that is, the "loss of enjoyment of life." There are three possibilities. Loss of enjoyment of life could be encompassed entirely by "physical impairment," not encompassed in that term at all, or spill across physical impairment as well as other categories of damage. Other than this Court's early, tangential ruminations in *In-*

*ternational & G.N. Railway Co. v. Butcher,*[34] mentioned above, we have never decided whether loss of enjoyment of life can be an element of recovery.

A very early court of appeals' decision, *Locke v. International & G.N. R. Co.,* indicated there could be no recovery for loss of enjoyment of life.[35] It held that there was no error in excluding testimony about "loss of capacity for 'the enjoyment of pleasures of life'" because the concept was "too vague to furnish any information upon a definite subject upon which damages would arise or be allowed."[36] We have found no other court of appeals decision in Texas that ascribes to this view.

Subsequently, a court of appeals recognized that the inability to have a normal life is compensable. In *Dr. Pepper Bot-*

---

evidence that plaintiff could no longer do aerobic exercises, she did not walk as well, her knees gave out, and her physician said likelihood of developing arthritis was much higher was sufficient to support award for physical impairment); *Peter,* 915 S.W.2d at 650; *Lawson–Avila Constr., Inc.,* 791 S.W.2d at 600 (noting that physician testified that 27–year–old plaintiff would have to restrict his activities for the rest of his life and his condition would become worse over time); *Tri–State Motor Transit Co.,* 765 S.W.2d at 493 (concluding that evidence of loss of ability to enjoy recreational sports supported award); *S. Pac. Transp. Co.,* 729 S.W.2d at 950–51; *Allen,* 603 S.W.2d at 244 (observing that plaintiff could no longer engage in manual labor as an employee or for his own benefit, mow a lawn, or play basketball); *Platt v. Fregia,* 597 S.W.2d 495, 495–96 (Tex.Civ. App.-Beaumont 1980, writ ref'd n.r.e.); *Browning,* 586 S.W.2d at 675 (observing that physician testified that condition of plaintiff's leg was permanent and the prognosis was poor, perhaps requiring amputation); *French,* 567 S.W.2d at 607–08; *Santa Rosa Med. Ctr.,* 560 S.W.2d at 760 (concluding that evidence of partial paralysis, spasticity, difficulty focusing both eyes, slurring of words, and inability to perform any of the usual tasks of a working man supported award for physical impair-

ment); *Charles T. Picton Lumber Co. v. Redden,* 452 S.W.2d 713, 723 (Tex.Civ.App.-Corpus Christi 1970, writ ref'd n.r.e.) (noting that plaintiff, a paraplegic, was permanently injured and would require braces, crutches, or a wheel chair); *Dr. Pepper Bottling Co. v. Rainboldt,* 66 S.W.2d 496, 501 (Tex.Civ.App.-Waco 1933), *rev'd on other grounds, Schroeder v. Rainboldt,* 128 Tex. 269, 97 S.W.2d 679 (1936) (plaintiff's bladder was permanently injured and she would be unable to have children); *see also Mo. Pac. R.R. Co. v. Handley,* 341 S.W.2d 203, 205 (Tex.Civ.App.-San Antonio 1960, no writ).

**32.** *See, e.g., Schindler Elevator Corp. v. Anderson,* 78 S.W.3d 392, 412–13 (Tex.App.-Houston [14th Dist.] 2001, judgm't vacated) (holding that temporary injuries supported award for past physical impairment, but that permanent injuries supported award for future physical impairment).

**33.** 44 S.W.3d 558, 561–62 (Tex.2001).

**34.** 98 Tex. 462, 84 S.W. 1052 (1905).

**35.** 25 Tex.Civ.App. 145, 60 S.W. 314, 316 (1901).

**36.** *Id.*

*tling Co. v. Rainboldt*,[37] a delivery truck struck a young girl. The defendant argued on appeal that the trial court allowed a double recovery because "physical pain and anguish are involved in bodily impairment."[38] The court of appeals rejected that argument, pointing out that the trial court had defined bodily impairment as "the loss or injury of a member."[39] The court explained that there was, of course, pain incident to such a loss, but that it was separate.[40] The court continued:

> To illustrate, a man might lose his leg; that would be a bodily impairment. In connection with the loss of the leg, he might suffer at the same time pain and anguish. The wound might heal and the pain and anguish disappear, but the bodily impairment, to wit, the loss of the leg, would remain. The evidence [in *Dr. Pepper*] supports the element of bodily impairment. Her bladder is permanent-

ly injured. She will not be able to bear children. Her injuries are permanent.[41] Under this reasoning, recovery for loss of a member could include the mental anguish for the loss of bodily functions, separate and apart from the pain and anguish experienced during recuperation, and could also include the loss of the ability to have, nurture, and enjoy children.

Other Texas courts of appeals' opinions that have considered loss of enjoyment of life have agreed on at least two things. First, a factfinder should be free to compensate an injured party who is physically impaired to the extent that party may no longer engage in or enjoy activities that he or she was able to do before the injury. Second, Texas courts of appeals have uniformly held that loss of enjoyment of life is not a separate category of damage,[42] which is in accord with a number of other jurisdictions.[43] Beyond this, the courts of appeals' decisions diverge.

---

**37.** 66 S.W.2d at 497.

**38.** *Id.* at 501.

**39.** *Id.*

**40.** *Id.*

**41.** *Id.*

**42.** *See, e.g., Mo. Pac. R.R. Co. v. Lane,* 720 S.W.2d 830, 834 (Tex.App.-Texarkana 1986, writ denied); *Spohn Hosp. v. Mayer,* 72 S.W.3d 52, 67 (Tex.App.-Corpus Christi 2001), *rev'd on other grounds,* 104 S.W.3d 878 (Tex. 2003); *Brookshire Bros., Inc. v. Wagnon,* 979 S.W.2d 343, 353 (Tex.App.-Tyler 1998, pet. denied).

**43.** *Akers v. Kelley Co.,* 173 Cal.App.3d 633, 219 Cal.Rptr. 513, 526 (1985); *Loth v. Truck–A–Way Corp.,* 60 Cal.App.4th 757, 70 Cal. Rptr.2d 571, 575 (1998); *Knight v. Lord,* 271 Ill.App.3d 581, 207 Ill.Dec. 917, 648 N.E.2d 617, 623 (1995); *Sena v. N.M. State Police,* 119 N.M. 471, 892 P.2d 604, 610–11 (Ct.App. 1995) (noting that loss of enjoyment of life is a factor to be considered in relation to other elements of damage such as disability, pain, suffering, and mental anguish); *Jones v. Chi-*

*cago Osteopathic Hosp.,* 316 Ill.App.3d 1121, 250 Ill.Dec. 326, 738 N.E.2d 542, 554–55 (2000); *Frito–Lay, Inc. v. Cloud,* 569 N.E.2d 983, 989 (Ind.Ct.App.1991); *Poyzer v. McGraw,* 360 N.W.2d 748, 753 (Iowa 1985); *Gregory v. Carey,* 246 Kan. 504, 791 P.2d 1329, 1336 (1990); *Adams v. Miller,* 908 S.W.2d 112, 116 (Ky.1995) (holding that hedonic value of life "is already recoverable in the recognized category of mental suffering"); *Anunti v. Payette,* 268 N.W.2d 52, 55 (Minn. 1978); *Anderson v. Neb. Dep't of Soc. Servs.,* 253 Neb. 813, 572 N.W.2d 362, 367 (1998) (holding that loss of enjoyment of life may properly be considered as it relates to pain and suffering and to disability, but it is improper to treat it as a separate category of nonpecuniary damages); *Bennett v. Lembo,* 145 N.H. 276, 761 A.2d 494, 498 (2000); *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196, 207 (1993); *but see Ogden v. J.M. Steel Erecting, Inc.,* 201 Ariz. 32, 31 P.3d 806, 813 (Ct.App.2001); *Preston v. Dupont,* 35 P.3d 433, 441 (Colo.2001); *Montalvo v. Lapez,* 77 Hawai'i 282, 884 P.2d 345, 364 (1994); *Curtis v. Porter,* 784 A.2d 18, 26 (Me.2001); *Kan. City S. Ry. Co. v. Johnson,* 798 So.2d 374, 380–81 (Miss.2001); *Moscatello v. Univ. of Med. and Dentistry,* 342 N.J.Super. 351, 776

The Texarkana court of appeals said in *Missouri Pacific Railroad Co. v. Lane* that "[l]oss of enjoyment of life may not be claimed as a separate element of damages, but may be treated as a factor in determining the damages in general or those for pain and suffering." [44] It reiterated this view in *Fibreboard Corp. v. Pool.*[45] The Corpus Christi court of appeals in *Spohn Hospital v. Mayer* seemed to agree with *Lane* and *Fibreboard,* concluding that "[e]vidence of a loss of enjoyment of life may be considered in determining damages in general or for pain and suffering." [46] However, the Tyler court of appeals' analyses do not agree entirely with the Texarkana and Corpus Christi courts. In *Brookshire Brothers, Inc. v. Wagnon,* the Tyler court suggested that "certainly the loss of enjoyment of life, which encompasses the loss of the injured party's former lifestyle, may be considered when determining mental anguish damages." [47] In *Wal–Mart Stores, Inc. v. Holland,* that court said that "physical impairment, sometimes termed loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle." [48] The Fourteenth District court of appeals in Houston seems to have agreed with the latter view of the Tyler court, holding that "[p]hysical impairment, sometimes called loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle." [49] A dissenting opinion in the San Antonio court of appeals contended that loss of enjoyment of life should be categorized as part of mental anguish damages.[50] Thus, loss of enjoyment of life has variously been categorized as an element of pain and suffering, mental anguish, or physical impairment.

The divergence of views is understandable. Courts across the country have struggled with whether loss of enjoyment of life is compensable at all, and if so, whether it is part of pain and suffering, mental anguish, or physical impairment, or is a separate, independent category of damages.[51] And, as indicated above, there

A.2d 874, 881 (2001); *Boan v. Blackwell,* 343 S.C. 498, 541 S.E.2d 242, 244 (2001); *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 715 (Tenn.Ct.App.1999); *Kirk v. Wash. State Univ.,* 109 Wash.2d 448, 746 P.2d 285, 292–93 (1987); *Mariner v. Marsden,* 610 P.2d 6, 12 (Wyo.1980).

**44.** 720 S.W.2d at 834.

**45.** 813 S.W.2d 658, 674 (Tex.App.-Texarkana 1991, writ denied) (stating that loss of enjoyment of life "may be treated as a factor in determining damages in general or for pain and suffering").

**46.** 72 S.W.3d at 67.

**47.** 979 S.W.2d at 353.

**48.** 956 S.W.2d 590, 599 (Tex.App.-Tyler 1997), *rev'd on other grounds,* 1 S.W.3d 91 (Tex.1999) (reversing award of attorney's fees).

**49.** *Schindler Elevator Corp. v. Anderson,* 78 S.W.3d 392, 412 (Tex.App.-Houston [14th Dist.] 2001, judgm't vacated).

**50.** *Santa Rosa Med. Ctr. v. Robinson,* 560 S.W.2d 751, 762 (Tex.Civ.App.-San Antonio 1977, no writ) (Cadena, C.J., dissenting).

**51.** *See generally Boan v. Blackwell,* 343 S.C. 498, 541 S.E.2d 242, 244–45 (2001) (holding that, when supported by the evidence, a jury shall be charged that the injured person is entitled to recover damages for loss of enjoyment of life); *Kan. City S. Ry. Co., Inc. v. Johnson,* 798 So.2d 374, 380 (Miss.2001) (holding that "loss of enjoyment of life should be fully compensated and should be considered on its own merits as a separate element of damages, not as a part of one's pain and suffering"); *Ogden v. J.M. Steel Erecting, Inc.,* 201 Ariz. 32, 31 P.3d 806, 813 (Ct.App.2001) (holding that a "separate charge on hedonic damages will minimize the risk that a jury will under- or over-compensate an injured person for her noneconomic losses"); *Jones v. Chicago Osteopathic Hosp.,* 316 Ill.App.3d 1121, 250 Ill.Dec. 326, 738 N.E.2d 542, 554 (2000) (stating that " 'loss of normal life' has almost universally been interpreted as a component of disability which compensates for a

is a logical nexus between loss of enjoyment of life and each of the categories of non-economic damages recognized in Texas—pain, suffering, mental anguish, disfigurement, and physical impairment.

The widely disparate views of courts in Texas and across the country lead us to conclude that in the case before us today, the court of appeals should not have applied the definition of "physical impairment" so frequently quoted by Texas

courts of appeals in considering the factual sufficiency of the evidence.[52] The court of appeals said, "[t]o recover damages for physical impairment, a plaintiff must prove 'that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated.' "[53]

change in the plaintiff's lifestyle"); *Knepper v. Robin*, 745 So.2d 1248, 1257 (La.Ct.App. 1999) (holding that trial court erred in "depriv[ing] the jurors of the opportunity to consider the distinctions between loss of enjoyment of life and the general damages of pain and suffering"); *Loth v. Truck–A–Way Corp.*, 60 Cal.App.4th 757, 70 Cal.Rptr.2d 571, 575 (1998) (surveying decisions and holding that "[l]oss of enjoyment of life, however, is only one component of a general damage award for pain and suffering [but] is not calculated as a separate award"); *Smallwood v. Bradford*, 352 Md. 8, 720 A.2d 586, 592–95 (1998) (examining authorities, concluding that loss of enjoyment of life was not recoverable when decedent was almost instantly killed in a car crash); *Adams v. Miller*, 908 S.W.2d 112, 116 (Ky.1995) (holding that hedonic value of life "is already recoverable in the recognized category of mental suffering"); *Knight v. Lord*, 271 Ill.App.3d 581, 207 Ill.Dec. 917, 648 N.E.2d 617, 623 (1995) (noting that loss of enjoyment of life is a component of disability damages, but the term "loss of a normal life" is less likely to be misunderstood than "disability"); *Fantozzi v. Sandusky Cement Prods. Co.*, 64 Ohio St.3d 601, 597 N.E.2d 474, 481–87 (1992) (surveying decisions regarding loss of enjoyment of life and holding that "permitting a separate interrogatory and jury finding on this damage, would help the jury understand exactly what claimed damages it is addressing"); *Eyoma v. Falco*, 247 N.J.Super. 435, 589 A.2d 653, 658 (1991) (holding that loss of enjoyment of life is a separate and distinct item of damages); *Frito–Lay, Inc. v. Cloud*, 569 N.E.2d 983, 989 (Ind.Ct.App.1991) (holding it "is error to instruct the jury on the loss of quality and enjoyment of life as an element of damages separate from other elements of damage, such as pain and suffering or permanency of injury"); *Gregory v. Carey*, 246 Kan. 504, 791 P.2d 1329, 1335–36 (1990)

(discussing the various decisions that have considered loss of enjoyment of life and concluding that it is "inextricably included within the more traditional areas of damages for disability and pain and suffering"); *Nussbaum v. Gibstein*, 73 N.Y.2d 912, 539 N.Y.S.2d 289, 536 N.E.2d 618, 619 (1989) (holding that "loss of enjoyment of life is not a separate element of damages deserving a distinct award but is, instead, only a factor to be considered by the jury in assessing damages for conscious pain and suffering"); *McDougald v. Garber*, 73 N.Y.2d 246, 538 N.Y.S.2d 937, 536 N.E.2d 372, 376–77 (1989) (surveying authorities and holding that loss of enjoyment of life is a permissible factor in assessing pain and suffering, but no purpose would be served by having the jury make separate awards); *see generally* Hermes, *Loss of Enjoyment of Life–Duplication of Damages Versus Full Compensation*, 63 N.D. L.Rev. 561 (1987); Annotation, *Loss of Enjoyment of Life as Distinct Element or Factor in Awarding Damages for Bodily Injury*, 34 A.L.R.4th 293 (1984); Cramer, Comment, *Loss of Enjoyment of Life as a Separate Element of Damages*, 12 Pac. L.J. 965 (1981).

**52.** *See, e.g., Green v. Baldree*, 497 S.W.2d 342, 350 (Tex.Civ.App.-Houston [14th Dist.] 1973, no writ) (holding that "[t]he plaintiff must sustain the burden of proving that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated").

**53.** 29 S.W.3d at 928 (quoting *Blankenship v. Mirick*, 984 S.W.2d 771, 777 (Tex.App.-Waco 1999, pet. denied)).

First, that definition does not fully eliminate the overlap among physical impairment, pain, suffering, mental anguish, and disfigurement. Nor does it give adequate guidance about whether the impairment must be the result of a permanent injury. Second, and more importantly, that definition was not given to the *jury* in this case. If courts across the country can rationally conclude that loss of enjoyment of life can be part of pain and suffering or mental anguish or disfigurement or physical impairment, then so can a jury. The jury in this case could have compensated Jackson for loss of enjoyment of life as part of physical pain and mental anguish, or disfigurement, or divided compensation in some manner between the two categories. The jury charge permitted the jury to make its own determination of how to categorize and compensate the losses suffered by Jackson.

The jury submission in this case comports with a practice suggested by some courts of appeals. Instead of defining damage categories for juries in such a way that they do not overlap, which we recognize may not be feasible for some damage elements, some courts of appeals have concluded that to avoid double awards of damages, particularly when physical impairment is submitted, juries should be directly instructed not to award overlapping damages.[54] The decision in *French v. Grigsby*[55] approved such an instruction in affirming the trial court's judgment

awarding damages for physical impairment:

> In answering this special issue you shall not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss, that is, do not compensate twice for the same loss, if any.[56]

This type of instruction informs the jury that it is not to make a duplicative award of damages. In this regard, we note that the trial court in the case before us today followed the State Bar of Texas Pattern Jury Charge to some extent,[57] which uses language different from the instruction in *French*. The trial court's charge said: "Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element." The instruction in *French* is clearer.

Given that some of the categories of damages submitted to the jury in this case were not defined and therefore were not cleanly and clearly segregated from one another, the question, then, is how should the court of appeals review the factual sufficiency of the evidence supporting the jury's award for physical impairment. It is to that question that we now turn.

## IV

The charge in this case permitted the jury to award separate amounts of dam-

---

54. *See, e.g., Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 825 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *Green*, 497 S.W.2d at 350 (commenting that when physical impairment is submitted as a separate element, "the defendant would be entitled, on request, to have the court submit a special instruction that would be calculated to prevent the jury from allowing a double recovery"); *see also Robinson v. Minick*, 755 S.W.2d 890, 894–95 (Tex.App.-Houston [1st Dist.] 1988, writ denied) (stating that limiting

instruction might have prevented jury from considering past physical impairment in making its award for other elements).

55. 567 S.W.2d 604 (Tex.Civ.App.-Beaumont), *writ ref'd n.r.e.*, 571 S.W.2d 867 (Tex.1978).

56. *Id.* at 608.

57. Texas Pattern Jury Charges PJC 8.2 (2000 ed.).

ages in six different categories. The standard of review to determine factual sufficiency of the evidence that we set forth today differs from the standard of review that is applied when the jury is asked to award a single amount of damages, but is told that it may consider various elements in arriving at that amount.[58] In the latter circumstance, we have held that a challenge must address all the elements that could have been considered by the jury in making its total, single-amount award.[59] "If there is just one element that is supported by the evidence, the damages award will be affirmed if it is supported by the evidence." [60]

In the case before us, the jury had six blanks to fill and was instructed not to award damages for the same element more than once. Unless the record demonstrates otherwise, an appellate court must presume that the jury followed these instructions.[61] In conducting its factual sufficiency review, the court of appeals should presume that the jury did not award damages to Jackson for any element more than once, unless the record demonstrates otherwise. Accordingly, in reviewing the evidence, the court of appeals should consider whether the jury could reasonably have compensated Jackson for a particular loss that might be "physical impairment other than loss of vision" under another category of damages. If the jury could have done so, then the failure to award damages for that particular loss would not be against the great weight and preponderance of the evidence.

The court of appeals should first consider what evidence is unique to "physical impairment other than loss of vision." In this regard, the bone fractures, ruptured sinus, and broken nose sustained by Jackson are the typical type of physical injury for which a jury could reasonably compensate an injured party through an award for physical pain and mental anguish. Evidence of Jackson's headaches could also logically fall either within "physical impairment other than loss of vision," for which the jury awarded no damages, or within past and future physical pain and mental anguish, for which the jury did award damages.

The evidence regarding Jackson's hospital confinements and his alleged loss of enjoyment of life for the two months he was recuperating present a more complex question. A number of decisions in other jurisdictions indicate that loss of enjoyment of life results from permanent rather than temporary injuries,[62]

---

**58.** *See, e.g., Thomas v. Oldham,* 895 S.W.2d 352, 360 (Tex.1995); *Price v. Short,* 931 S.W.2d 677, 688 (Tex.App.-Dallas 1996, no writ); *Greater Houston Transp., Inc. v. Zrubeck,* 850 S.W.2d 579, 589 (Tex.App.-Corpus Christi 1993, writ denied).

**59.** *See Price,* 931 S.W.2d at 688.

**60.** *Greater Houston Transp., Inc.,* 850 S.W.2d at 589.

**61.** *See Gillette Motor Transp. Co. v. Whitfield,* 145 Tex. 571, 200 S.W.2d 624, 626 (Tex. 1947); *see also In re K.R.,* 63 S.W.3d 796, 800–01 (Tex.2001); *Turner, Collie, & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160,

167 (Tex.1982); *Daugherty v. S. Pac. Transp. Co.,* 772 S.W.2d 81, 83 (Tex.1989).

**62.** *Kan. City S. Ry. Co. v. Johnson,* 798 So.2d 374, 381 (Miss.2001) (distinguishing loss of enjoyment of life from pain and suffering, noting that "[a] permanent injury differs from pain and suffering in that it is an injury from which the plaintiff cannot completely recover"); *Ogden v. J.M. Steel Erecting, Inc.,* 201 Ariz. 32, 31 P.3d 806, 813 (Ct.App.2001) (defining loss of enjoyment of life as "damages [that] compensate the individual not only for the subjective knowledge that one can no longer enjoy all of life's pursuits, but also for the objective loss of the ability to engage in these activities"); *Bennett v. Lembo,* 145 N.H.

although a few decisions indicate otherwise.[63] Particularly in light of the availability of damages in other categories, such as pain, suffering, and mental anguish to compensate for a temporary inability to enjoy life's activities, a jury could reasonably conclude that hedonic damages should be awarded only for permanent injuries. To the extent that our decision in *Estrada v. Dillon*[64] could be read to hold otherwise, we did not focus on that specific issue, as we now have done. As the Supreme Court of Michigan has observed, "the pangs of separation from family during hospitalization may be taken into account as a part of the injured person's mental suffering."[65] The Supreme Court of Alaska has also categorized "a substantial amount of time convalescing in the hospital" as evidence of pain and suffering.[66] But whether to award damages and how much is uniquely within the factfinder's discretion.

■ We are persuaded that in the proper case, when the evidence supports such a submission, loss of enjoyment of life fits best among the factors a factfinder may consider in assessing damages for physical impairment. Indeed, if other elements such as pain, suffering, mental anguish, and disfigurement are submitted, there is little left for which to compensate under the category of physical impairment other than loss of enjoyment of life. Accordingly, if "physical impairment" is defined for a jury, it would be appropriate to advise the jury that it may consider as a factor loss of enjoyment of life. But the jury should be instructed that the effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity and that a claimant should not be compensated more than once for the same elements of loss or injury.

276, 761 A.2d 494, 498 (N.H.2000) (holding that damages for loss of enjoyment of life are a component of permanent impairment); *Sena v. N.M. State Police,* 119 N.M. 471, 892 P.2d 604, 611 (Ct.App.1995) (holding that "New Mexico permits proof of nonpecuniary damages resulting from the loss of enjoyment of life in tort actions involving permanent injuries"); *Laing v. Am. Honda Motor Co., Inc.,* 628 So.2d 196, 204 (La.Ct.App.1993) (finding evidence sufficient to support award for hedonic damages when, seven years after the accident, plaintiff could not feed himself or enjoy writing or cooking, and required assistance to perform basic tasks); *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196, 200 (1993) (stating that "damages for the loss of enjoyment of life are a valid element of recovery when a plaintiff has suffered a permanent injury") (emphasis omitted); *Fantozzi v. Sandusky Cement Prods. Co.,* 64 Ohio St.3d 601, 597 N.E.2d 474, 486–87 (1992) (holding that a jury should be instructed that it may award damages for an inability to perform usual activities of life or usual activities that give pleasure if it finds a permanent disability); *Eyoma v. Falco,* 247 N.J.Super. 435, 589 A.2d 653, 662 (1991) (holding that loss of enjoyment of life is an element of the permanent

injury a plaintiff has suffered); *Kirk v. Wash. State Univ.,* 109 Wash.2d 448, 746 P.2d 285, 292–93 (1987) (holding that trial court did not err in allowing jury to consider loss of enjoyment of life when injury to plaintiff's elbow was permanent and she could not become a professional dancer); *Gowdy v. United States,* 271 F.Supp. 733, 751 (W.D.Mich.1967) (noting in reviewing evidence of loss of enjoyment of life that the plaintiff's impairment was permanent).

**63.** *Smith v. City of Evanston,* 260 Ill.App.3d 925, 197 Ill.Dec. 810, 631 N.E.2d 1269, 1279 (1994) (noting that "loss of a normal life" should be "defined as plaintiff's 'diminished ability to enjoy life that the plaintiff has experienced,' which should include plaintiff's temporary or permanent inability to pursue the pleasurable aspects of life, such as recreation or hobbies") (citation omitted).

**64.** 44 S.W.3d 558 (Tex.2001).

**65.** *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424, 436 (1981).

**66.** *Am. Nat'l Watermattress Corp. v. Manville,* 642 P.2d 1330, 1341 (Alaska 1982).

In the case before us today, no definition of "physical impairment" was given or requested. Without any definition to guide it, the jury could have concluded that Jackson's temporary injuries resulted in compensable loss of enjoyment of life. However, the jury could reasonably have decided to compensate Jackson for the time he spent hospitalized and recuperating, during which he was unable to enjoy recreational activities, under the category of physical pain and mental anguish. Or, the jury could have decided that Jackson should not recover any hedonic damages for his temporary injuries. If a court of appeals were to base its decision on the sufficiency of the evidence to support the jury's failure to award damages for one category of damages (or its failure to award larger damages) on evidence that the jury could have credited in making an award for other damage elements, then the court of appeals would be substituting its judgment for that of the jury in evaluating in which category, if any, the injured party should have been compensated. A court of appeals should therefore confine its review to evidence, if any, that is unique to the challenged category. If the jury's failure to award damages or the amount of damages awarded is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias, then a new trial would be required.

If only one category of the jury's award is challenged, and the award in that category is not against the great weight and preponderance of the evidence unique to it, the court's inquiry should end there. A court should not consider losses or injuries for which the jury could have compensated the injured party under a different category unless a factual sufficiency challenge is made to all overlapping categories of damages. Otherwise, an injured party could receive an adequate award for all injuries and losses sustained when a jury chooses to compensate for injuries or losses in the categories of pain, suffering or mental anguish, rather than physical impairment, and the injured party would still get a new trial by challenging only the jury's award under physical impairment.

In this case, Jackson has challenged the factual sufficiency of the jury's failure to award larger damages in the categories of physical pain and mental anguish, physical impairment of loss of vision, and disfigurement, as well as the award of no damages for "physical impairment other than loss of vision." The court of appeals should conduct a review of each of these categories, considering the evidence unique to each category. If, after considering evidence unique to a category, the court concludes that the jury's failure to award larger damages for that category is against the great weight and preponderance of the evidence, it should then consider all the overlapping evidence, together with the evidence unique to each other category to determine if the total amount awarded in the overlapping categories is factually sufficient. This takes into account all the evidence regarding damages in categories that overlap, but does not credit that evidence more than once in evaluating the amount awarded by the jury.

The necessary corollary to these principles is that in reviewing a challenge that an award for a category is excessive because there is factually insufficient evidence to support it, a court of appeals should consider all the evidence that bears on that category of damages, even if the evidence also relates to another category of damages. To do otherwise would mean that evidence that reasonably could have supported the jury's award would not be considered, which would be improper. If more than one award in overlapping categories is challenged as excessive, the court

of appeals should consider all the evidence that relates to the total amount awarded in all overlapping categories to determine if the total amount awarded was excessive. This likewise gives full effect to all the evidence without crediting any of the evidence more than once.

Golden Eagle contends that the court of appeals concluded that the jury was required to award damages for "physical impairment other than loss of vision" solely on the basis that there was objective evidence of physical injury. In this regard the court of appeals said that it found the decision in *Robinson v. Minick*[67] "instructive."[68] The injured party in *Robinson* had facial fractures, surgery, and spent a month in the hospital. The court in *Robinson* held that "when we apply settled law that requires a jury to award something for every element of damage proven, to the undisputed, objective evidence of severe physical impairment in the past, we cannot escape the conclusion that the jury's finding of $0 is against the great weight and preponderance of the evidence."[69] Similarly, the court of appeals in this case held that "[t]here is nothing subjective or conflicting about the evidence of the broken bones around [Jackson's] eye, the broken nose, or ruptured sinus" and that these "injuries are demonstrative of impairment beyond pain and suffering, loss of earning capacity, and loss of vision."[70]

In keeping with the principles that a court may not substitute its judgment for that of the jury and that the jury is the sole judge of the weight and credibility of testimony, courts should not conclude that a jury's failure to award any damages for physical impairment is against the great weight and preponderance of the evidence simply because there is objective evidence of an injury. The courts of appeals in *Landacre v. Armstrong Building Maintenance Co.*[71] and *Platt v. Fregia*[72] both concluded that a jury's failure to award damages for physical impairment was not against the great weight and preponderance of the evidence even though the plaintiffs in those cases had some permanent functional loss of a part of their body. In *Landacre*, the plaintiff had a frozen shoulder and her normal range of motion decreased to 50%. In *Platt*, the plaintiff lost 30% function in his knee. The jury in each case had awarded amounts in other categories of non-economic damages. The court in *Landacre* concluded that "[t]he determination that the appellant has not and will not suffer physical impairment apart from that already compensated for is uniquely within the jury's province."[73]

Similarly, in *Pilkington v. Kornell,* the court of appeals concluded that when a jury is presented with conflicting evidence about the existence and severity of a physical injury and associated pain, the jury "could believe all or any part of the testi-

---

**67.** 755 S.W.2d 890 (Tex.App.-Houston [1st Dist.] 1988, writ denied).

**68.** 29 S.W.3d at 929.

**69.** 755 S.W.2d at 894.

**70.** 29 S.W.3d at 929.

**71.** 725 S.W.2d 323, 325 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.).

**72.** 597 S.W.2d 495, 495–96 (Tex.Civ.App.-Beaumont 1980, writ ref'd n.r.e.).

**73.** 725 S.W.2d at 325; *see also Platt,* 597 S.W.2d at 495–96 (holding that jury was not required to award damages for physical impairment in addition to damages for past physical and mental anguish even though plaintiff severely injured his knee, surgery was required, and there was a 30% functional loss).

mony of any witness and disregard all or any part of the testimony of any witness." [74] The court upheld a jury's failure to award any damages for pain and suffering. [75] This does not mean, however, that a verdict awarding no damages for pain and suffering should be upheld on appeal if there is objective, undisputed evidence of a significant injury and the jury could not have compensated the injured party in some other category of damages.

In *Monroe v. Grider*, [76] the court of appeals properly drew a distinction between a jury's failure to award damages for pain and suffering when there was objective, undisputed evidence of injury and the jury's failure to award damages for mental anguish. In that case, the trial court had submitted physical pain and mental anguish in one issue. The jury failed to award any damages in that category, although the plaintiff had a fractured wrist and a sprained muscle in her groin that "temporarily prevented her from working and fully enjoying recreational activities." [77] The court of appeals held, "[u]ncontroverted evidence of an objective injury does not always require mental anguish damages," but the jury could not ignore uncontroverted evidence of injury in denying any recovery for past physical pain. [78]

To summarize the factual sufficiency standard of review that we adopt today, when only one category of damages is challenged on the basis that the award in that category was zero or was too low, a court should consider only whether the evidence unique to that category is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. When, as in this case, the jury's failure to find greater damages in more than one overlapping category is challenged, the court of appeals should first determine if the evidence unique to each category is factually sufficient. If it is not, the court of appeals should then consider all the overlapping evidence, together with the evidence unique to each category, to determine if the total amount awarded in the overlapping categories is factually sufficient.

This standard of review gives due regard to a jury's choice of whether and how to categorize and compensate for specific losses or injuries that could reasonably fall into more than one category of damages. It also advances the principles that a tort victim should be fully and fairly compensated, but that a double recovery should be avoided.

Additionally, in reviewing a jury's failure to award any damages, courts of appeals should apply the principles articulated in *Pool v. Ford Motor Co.* [79] In this case, the court of appeals did not detail the evidence that supported the jury's failure to award any damages for physical impairment other than loss of vision or state in what regard the contrary evidence greatly

---

74. 822 S.W.2d 223, 230 (Tex.App.-Dallas 1991, writ denied).

75. *Id.* at 231; *see also Waltrip v. Bilbon Corp.,* 38 S.W.3d 873, 881–82 (Tex.App.-Beaumont 2001, pet. denied) (holding that $100 award for past physical pain and mental anguish was not against great weight and preponderance of the evidence); *Srite v. Owens–Ill., Inc.,* 870 S.W.2d 556, 563 (Tex.App.-Houston [1st Dist.] 1993), *rev'd on other grounds, Owens–Ill., Inc. v. Estate of Burt,* 897 S.W.2d 765

(Tex.1995) (reversing only on pre-judgment interest).

76. 884 S.W.2d 811, 820 (Tex.App.-Dallas 1994, writ denied).

77. *Id.* at 819.

78. *Id.* at 820.

79. 715 S.W.2d 629, 635 (Tex.1986).

outweighed the evidence in support of the verdict, as our decision in *Pool* requires.

## V

■ Finally, we consider Golden Eagle's contention that the trial court erred in submitting both "physical impairment of loss of vision" and "physical impairment other than loss of vision" as separate items of damage. Golden Eagle argues that submitting these elements violated Texas Rule of Civil Procedure 277. We need not decide whether Golden Eagle preserved this complaint for appeal because we conclude that there was no reversible error in the submission.

Rule 277 provides that "[i]n all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions." [80] Although the trial court granulated physical impairment into two separate categories, Golden Eagle did not explain how it was harmed by this submission, particularly in light of the jury's award of "$0" for physical impairment other than loss of vision.

We reverse the judgment of the court of appeals and remand this case to that court for further proceedings.

Justice O'NEILL filed a concurring opinion, in which Justice SCHNEIDER joined.

Justice JEFFERSON did not participate in the decision.

Justice O'NEILL filed a concurring opinion, in which Justice SCHNEIDER joined.

If I were directed to conduct a factual sufficiency review of the evidence in this case under the standard the Court articulates today, I wouldn't have a clue. The question this case presents is simple and straightforward: did the court of appeals follow the review standard we articulated in *Pool v. Ford Motor Company,* 715 S.W.2d 629 (Tex.1986), in reviewing the jury's award of zero damages for Jackson's physical impairment other than loss of vision? Clearly it did not, applying instead the so-called "zero damages" rule. That rule is inconsistent with *Pool,* and we should take this opportunity to clearly say so. I would reverse the court of appeals' judgment and remand the case for consideration of the evidence under the well-established *Pool* standard. Because the Court fashions a confusing and unnecessary review standard that will be difficult, if not impossible, to apply, I concur in the judgment only.

In *Pool v. Ford Motor Company,* we said that courts of appeals should, when reversing on insufficiency grounds,

> detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.

715 S.W.2d at 635. Courts of appeals may not reverse on the mere conclusion that the evidence preponderates toward an affirmative answer but may reverse only after a detailing of evidence under *Pool* indicates that the great weight of that evidence supports an affirmative answer. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988).

Some courts of appeals, though, have applied a different rule when a jury finds

---

**80.** Tex.R. Civ. P. 277.

liability but fails to award damages. Although the so-called "zero damages" rule has various iterations, it generally provides that, once a jury has found an injury and some resulting damage, the failure to compensate for intangible damage elements such as pain and suffering is necessarily against the great weight and preponderance of the evidence. *See* W. Wendall Hall, *Standards of Review in Texas,* 29 St. Mary's L.J. 351, 465–66 (1998); Raul A. Gonzalez & Rob Gilbreath, *Appellate Review of a Jury's Finding of "Zero Damages,"* 54 Tex. B.J. 418 (1991). When strictly applying the "zero damages" rule, a reviewing court does not consider and weigh all of the evidence in the case (both that which tends to support the jury's finding and that which does not), state in what regard the contrary evidence greatly outweighs the evidence that supports the verdict, or explain why the jury's finding shocks the conscience or clearly demonstrates bias, as *Pool* requires. Because the "zero damages" rule is inconsistent with the *Pool* review standard, we should take this opportunity to expressly disavow it.

In this case, although the court of appeals recited the *Pool* standard, it actually conducted an evidentiary review that more closely resembles the "zero damages" rule. From the existence of the injury itself, which necessitated hospitalization and surgery, the court of appeals concluded that Jackson suffered compensable physical impairment other than loss of vision and that the jury's finding to the contrary was so against the great weight and preponderance of the evidence as to be manifestly unjust. There are several problems with the court of appeals' approach. First, the court began its analysis by examining the record for evidence *against* the jury's finding, citing Jackson's facial fractures, hospitalization and frequent headaches as some evidence of impairment other than loss of

vision. It then failed to recite all of the evidence that *supports* the jury's finding. Jackson himself testified that he recovered well from his eye injury, and that he received an excellent result from his surgery. There was evidence that Jackson's headaches had lessened over time. At Jackson's request, his doctor released him to return to work approximately two months after the injury, and he continued to work five days a week as he had before. Jackson was able to perform tasks around the home after his injury, and he continued to go hunting, although not as frequently. The court of appeals recounted some of this evidence, but failed to articulate in what regard the contrary evidence so greatly outweighed the evidence supporting the jury's verdict as to shock the conscience or be manifestly unjust. *See Pool,* 715 S.W.2d at 635.

More importantly, though, in order to recover, Jackson had to demonstrate that his physical impairment other than loss of vision produced a distinct loss that was substantial and should be compensated. *See Estrada v. Dillon,* 44 S.W.3d 558, 562 (Tex.2001) (citing *Landacre v. Armstrong Bldg. Maint. Co.,* 725 S.W.2d 323, 325 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.)) (applying rule that to recover for physical impairment a plaintiff must prove that the effect of the physical impairment extends beyond any impediment to earning capacity or pain and suffering to the extent that it produces a substantial separate and distinct loss); *Platt v. Fregia,* 597 S.W.2d 495, 495–96 (Tex.Civ.App.-Beaumont 1980, writ ref'd n.r.e.) (concluding that the jury was not required to award physical impairment damages where plaintiff suffered severe knee injury, but surgery produced good results, plaintiff was soon able to resume almost everything he could do before the injury, and he had a 30% functional loss). The

charge in this case allowed the jury to award separate damages for medical care, physical pain and mental anguish, physical impairment of loss of vision, physical impairment other than loss of vision, disfigurement, and loss of earnings in the past. The jury was instructed to consider each damage element separately and not to include damages for one element in any other. We must presume that the jury followed the court's instruction. *See In re J.F.C.*, 96 S.W.3d 256, 298 (Tex.2002)(Hankinson, J., dissenting). Accordingly, to reverse based on the jury's finding of zero damages for Jackson's alleged physical impairment other than loss of vision, the court of appeals was required to detail the evidence that would show Jackson suffered a distinct physical impairment loss that did not overlap the other damage elements the jury found. Further, that evidence must demonstrate a distinct loss so substantial and compelling that, when weighed against the contrary evidence, the jury's failure to compensate it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. The court of appeals summarily concluded that Jackson's facial fractures, hospitalization, and headaches "are demonstrative of impairment beyond pain and suffering, loss of earning capacity, and loss of vision," but it does not explain how they resulted in any impairment beyond the damages elements for which Jackson was compensated or why the jury's contrary finding was manifestly unjust. I would reverse and remand the case to the court of appeals with instructions to conduct a proper factual sufficiency review under the standard we articulated in *Pool.*

Rather than applying the relatively straightforward *Pool* standard, the Court wanders through the origins of physical impairment as a distinct damage element (something neither party felt compelled to discuss), ruminates on whether impairment damages should be awarded for other than permanent injuries (again, neither party raised the issue), and contemplates which damage element best encompasses the concept of hedonic damages (nary a word from the parties). Because the Court's writing consists primarily of dicta, and the factual sufficiency review standard it "adopt[s] today" is confusing at best and completely unnecessary, I concur in the judgment only.