**Opinion issued August 8, 2023**



In The

# Court of Appeals

**For The**

# First District of Texas

—————————————

**NO. 01-23-00137-CV**

**NO. 01-23-00139-CV**

—————————————

**IN THE MATTER OF W.A.**

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 2022-00681J & 2022-00682J**

---

**MEMORANDUM OPINION**

These two appeals arise from the juvenile court's orders entered in two cases waiving its exclusive original jurisdiction and transferring W.A. ("Wade") to criminal district court to stand trial as an adult for two charges of the first-degree

felony offense of aggravated sexual assault of a child.[1] To support the waiver of jurisdiction and transfer to criminal district court, Family Code section 54.02(j) required the State to prove at a certification hearing, among other things, that Wade was at least fourteen years old and under seventeen when the two offenses allegedly occurred. *See* TEX. FAM. CODE § 54.02(j)(2)(B).

In a single issue with several sub-issues in both appeals, Wade primarily argues that the evidence was legally insufficient to prove he was within the requisite age range when the two offenses allegedly occurred. Wade also argues that the evidence was factually insufficient to prove he fell within the requisite age range. He further argues that the juvenile court abused its discretion in ultimately waiving its jurisdiction and transferring him to criminal district court to stand trial as an adult. We affirm.

## Background

On February 1, 2021, law enforcement received a report that Wade had sexually assaulted A.M. ("Annie") multiple times and L.N. ("Lanie") one time. All three are first cousins. Wade was born in February 2000. He is seven years older than Lanie, who was born in October 2007. Wade is eight years older than Annie,

---

[1] In this opinion, we refer to W.A., the complainant, and their family members by pseudonyms. *See* TEX. FAM. CODE § 56.01(j) (prohibiting identification of child or family in appeal related to juvenile delinquency proceedings).

who was born in April 2008. At the time of the outcries in February 2021, Wade was just under twenty-one, Lanie was thirteen, and Annie was twelve.

An officer met Annie's mother at her house to take her report. According to a report summarizing the allegations, Annie's mother received a call from Lanie's mother informing her that Lanie had made an outcry about Wade sexually abusing Lanie and Annie. Annie's mother asked Annie about the allegation, and Annie answered that Wade had had sexual intercourse with her more than five times, but she did not want to discuss it further. Annie's mother reported that the incident occurred approximately four years earlier in 2017, and she believed the sexual abuse ended around then.

The reporting officer also met with Lanie's mother on the same day. Lanie's mother reported that Lanie said Wade sexually assaulted the girls in 2015.

In November 2021, the case was assigned to Deputy George Delforge with the Harris County Sheriff's Office to investigate the sexual abuse allegations. After reviewing the initial report, Delforge completed an offense report that included the initial officer's report as well as his own notes from his investigation.

According to the report, Delforge arranged for the girls to be forensically interviewed at the Children's Assessment Center. Delforge attended both girls' forensic interviews, took notes, and summarized the interviews in the offense report. The offense report was admitted into evidence at the certification hearing.

During her forensic interview, Annie said that Wade had sexually assaulted her multiple times. She described the first incident in detail. Wade brought her into her bedroom under the pretense of wanting to "have a talk" with her. Once they were in the bedroom, Wade took off both of their clothes and sexually assaulted her by penetrating her anus with his penis. Wade gave Annie a game to play on his cell phone to stop her from crying. Lanie began banging on the bedroom door from the outside. After Wade finished assaulting Annie, he made her wait outside while he took Lanie into the bedroom and closed the door. Annie could hear the bed squeaking from outside the closed door.

Annie could not remember exactly when this first alleged sexual assault occurred, although she said that Wade was fifteen years old at the time. She also said, however, that it happened before she started pre-kindergarten. Wade contends that he was under fourteen years old when Annie was in pre-kindergarten. Annie also recalled that this first incident happened when Wade's brother ("Michael") lived at her house. Annie's mother told Delforge that Michael was eighteen months younger than Wade, and Michael lived with them when he was in fifth grade through seventh grade. Wade contends that he was not yet fourteen when Michael lived with Annie's family.

Annie also described a second alleged sexual assault in detail. She was playing in her bedroom while some other family members were downstairs. Wade entered

4

her bedroom, shut the door, and locked it. She tried to leave, but Wade stopped her and made her take off her clothes. She said Wade did "the same thing" he did to her before, explaining that she meant he put his "thing" inside of her butt. Wade stopped when they heard someone walking up the stairs.

Annie said that Wade sexually assaulted her more than one time; she said it occurred "[a] lot more" than three times. She believed that it happened the last time when she was between eight and ten years old, although she could not remember the dates well. Wade would have been between sixteen and eighteen years old when Annie was between eight and ten.

Annie also described other alleged incidents of sexual assault that did not involve anal contact.

During Lanie's forensic interview, Lanie said that Wade sexually abused her one time, although she had learned that he sexually assaulted Annie numerous times. Lanie described the same incident Annie had described as the first incident: Wade allegedly took Annie into the bedroom, sexually assaulted her, and then made her wait outside the bedroom while he took Lanie into the bedroom and did the same thing to Lanie. Like Annie, Lanie remembered Wade giving her a game to play on his cell phone to make her stop crying. Lanie remembered that the game was called "Subway Surfers," and she later searched the internet and discovered that the game was released around 2012 or 2013, when she was five or six years old. Lanie could

5

not remember exactly when the sexual assault occurred, but she believed that she and Annie were about five or six years old and Wade was about fourteen or fifteen years old. According to their dates of birth, however, Wade would have been twelve or thirteen years old in 2012 or 2013 when Lanie and Annie were about five or six years old.

In April 2022, the State filed two petitions in juvenile court alleging that Wade had engaged in delinquent conduct when he was at least fourteen years old but before he turned seventeen. Both petitions alleged that Wade "unlawfully, intentionally and knowingly cause[d] the anus of [Annie], a person younger than fourteen years of age, to contact the sexual organ of [Wade]." The only difference in the petitions was the date of the alleged conduct. The first petition alleged that the conduct occurred in February 2017, shortly before Wade's seventeenth birthday. The second petition alleged that the conduct occurred in February 2014, shortly after Wade turned fourteen.

The State also filed a motion in both cases requesting that the juvenile court waive its exclusive original jurisdiction over the allegations in the petitions and transfer Wade to criminal district court to be tried as an adult in criminal proceedings for the felony offenses of aggravated sexual assault. *See* TEX. FAM. CODE § 54.02(j).

In January 2023, the juvenile court held a certification hearing to determine whether to waive its jurisdiction and transfer Wade to criminal district court. The

6

court admitted several of the State's documentary exhibits without objection. The State's exhibits included a stipulation of Wade's date of birth, the petitions filed in both cases, the motions to waive jurisdiction filed in both cases, and the offense report discussed above.

The State's exhibits also included a probable cause statement, in which Delforge recounted Annie's belief that the first sexual assault occurred before Annie began preschool and Lanie's belief that she was approximately five to six years old when it occurred. Cross-referencing their dates of birth, "[Delforge] calculated that [Wade] would have been under 14 years old when [Annie] began preschool." Delforge also summarized Annie's statement that Wade had penetrated her anus with his penis on multiple later occasions: she stated this occurred "a lot more" than three times. Delforge stated that "the last incident of sexual abuse by [Wade], wherein he penetrated her [Annie's] anus with his penis, occurred when she was approximately 8 years old." Delforge "calculated that [Wade] sexually assaulted [Annie] on multiple occasions between [early February 2014], when [Wade] was 14 years old, and [early February 2017], when [Wade] was 16 years old."

Finally, the juvenile court admitted a probation report. This report summarized information from another report that is not clearly identified but stated that "[Wade] was 14 years old" when he "sexually assaulted [Annie] on more than five occasions prior to her starting preschool."

7

Delforge was the sole witness to testify at the certification hearing. He testified that Annie, Lanie, and Wade were all first cousins, and Wade stayed at Annie's house a lot when they were younger children. According to Delforge, "[Annie] said that she was sexually assaulted by [Wade] on multiple occasions." Annie "wasn't able to give an exact number; but she said certainly more than three times—actually, [she] said a lot more than three times."

Delforge testified about the two alleged sexual assaults that Annie specifically described in her forensic interview, which we discussed above. Regarding the first incident, involving both Annie and Lanie, Delforge testified that Annie believed Wade was "around 15 years old at that time, and it was before she started school." Delforge testified that Lanie believed Wade was around 14 or 15 years old at the time. Delforge recalled Lanie saying that the game she played during the incident was released in 2012 or 2013, so the incident occurred sometime after the game was released. Based on his consideration of the girls' reports and forensic interview responses, Delforge concluded that the first incident occurred in 2014 when Wade was 14 years old.

Delforge also recalled Annie specifically describing the second incident. He did not, however, testify about when this incident occurred.

On cross-examination, Wade's counsel focused primarily on Annie's statement that the first alleged sexual assault occurred before she started school and,

8

consequently, whether Wade had turned fourteen years old by that time. Delforge acknowledged that: Annie believed the first incident occurred prior to her attending pre-kindergarten; children typically start kindergarten at age five or six; Annie would have started pre-kindergarten one year before kindergarten; and, thus, Wade would not yet have turned fourteen by Annie's fourth or fifth birthday.

Although Delforge acknowledged that the first incident "could" have occurred before Wade's fourteenth birthday, he nevertheless testified that he concluded from his investigation that the sexual abuse occurred after Wade's fourteenth birthday but before his seventeenth birthday. Delforge testified that the dates alleged in the petitions—just after Wade's fourteenth birthday and just before his seventeenth birthday, respectively—represented "a date range between these two dates we [have] probable cause to believe that multiple incidents of sexual assault occurred." "It's an estimation of a date provided by a 12 year old complainant trying to remember something that happened when she was a younger child." Delforge explained:

> Again, putting together the different statements of both girls, that's about when it looks like it had ended [around the time Wade turned seventeen]. The most—the things that were said the most, that match up the most, was that that first incident happened when the girls were about 5 or 6 and when he was about 14 or 15. And that was the first incident. And then it happened several more times, after that time, over the next three to four years. . . . To 2017, which would match [Annie] saying she was about 8 years old.

On re-direct examination, Delforge reiterated that "the points that [he] used the most" to estimate the dates of the sexual assaults were:

9

both girls estimating that that first incident happened when they were around 5 or 6, and when [Wade] was about 15. And then—which would put us into the 2014 date. And then [Annie] saying that multiple incidents happened after that for several years with [Wade], the last of which being when she was about 8 years old.

Delforge based his conclusions on Annie's and Lanie's forensic interviews, their statements during their medical examinations, and the reports from both girls' mothers. At the end of the hearing, the juvenile court took the matter under advisement.

The juvenile court subsequently entered written orders in both cases waiving its jurisdiction and transferring both cases to the criminal district court to try Wade as an adult. Both orders included the following finding of fact verbatim: "Respondent [Wade] was 14 years or older but under 17 years of age at the time he/she is alleged to have committed this offense being born" in February 2000. This appeal followed.

**Waiver of Juvenile Jurisdiction and Transfer to Criminal District Court**

In his sole issue with several sub-issues in both appeals, Wade challenges the juvenile court's finding that he was at least fourteen years old but under seventeen when he engaged in the conduct alleged in the two petitions. Wade primarily challenges the legal sufficiency of the evidence supporting this finding, but he also challenges the factual sufficiency of the evidence. He also argues that the juvenile

court abused its discretion by ultimately waiving its jurisdiction and transferring the cases to criminal district court.

## A. Standard of Review

Juvenile delinquency proceedings are civil proceedings that are quasi-criminal in nature. *State v. C.J.F.*, 183 S.W.3d 841, 847 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The Juvenile Justice Code governs such proceedings. *See* TEX. FAM. CODE §§ 51.01–61.107. Juvenile courts have exclusive original jurisdiction over allegations by the State that a child has engaged in delinquent conduct. *Id.* § 51.04(a); *see id.* §§ 51.03(a)(1) (defining "delinquent conduct" to include "conduct, other than a traffic offense, that violates a penal law of this state"), 51.02(2)(A) (defining "child" to include person ten years old or older and under seventeen); *In re A.M.*, 577 S.W.3d 653, 657 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) ("When a child engages in conduct that would be considered criminal if committed by an adult, it is called 'delinquent conduct.'") (quoting TEX. FAM. CODE § 51.03(a)(1)). This jurisdiction, however, is not absolute. *Bell v. State*, 649 S.W.3d 867, 885 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd).

In certain circumstances, a juvenile court may waive its exclusive original jurisdiction and transfer the subject child to criminal district court to be tried as an adult in a criminal proceeding. *See* TEX. FAM. CODE § 54.02(j). Generally, when a child who is the subject of delinquency proceedings turns eighteen years old, the

juvenile court's jurisdiction is limited to either dismissing the case or transferring the child to criminal district court for criminal proceedings. *In re A.M.*, 577 S.W.3d at 658 & n.5; *see* TEX. FAM. CODE § 51.0412 (authorizing juvenile court to retain jurisdiction over incomplete proceedings once child has turned eighteen in limited circumstances). The State bears the burden to produce evidence that persuades a juvenile court, by a preponderance of the evidence, that waiver of the court's jurisdiction and transfer to criminal district court is appropriate. *In re A.M.*, 577 S.W.3d at 658; *In re J.W.W.*, 507 S.W.3d 408, 415 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

We use a two-step standard to review a juvenile court's order waiving its exclusive original jurisdiction and transferring a case to criminal district court. *Bell*, 649 S.W.3d at 887. First, we review the challenged findings under a traditional evidentiary sufficiency review. *Id.* In considering the legal sufficiency of evidence supporting a finding, we view the evidence in the light most favorable to the challenged finding and disregard contrary evidence unless a reasonable factfinder could not reject it. *Id.*; *In re A.M.*, 577 S.W.3d at 659. If more than a scintilla of evidence supports the finding, then the evidence is legally sufficient. *Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659. In conducting a factual sufficiency review, we consider all the evidence presented to determine whether the challenged

finding conflicts with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659.

When the juvenile court sits as factfinder, as here, the court alone determines the credibility of witnesses and the weight to give their testimony. *Bell*, 649 S.W.3d at 896; *In re A.B.*, No. 02-18-00274-CV, 2019 WL 983751, at *3 (Tex. App.—Fort Worth Feb. 28, 2019, no pet.) (mem. op.). The factfinder may "believe or disbelieve a witness's testimony, in whole or in part, and [is] tasked with weighing the evidence and resolving any inconsistencies." *Bell*, 649 S.W.3d at 896; *accord Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018) (stating that factfinder's role is to evaluate credibility of witnesses and reconcile any inconsistencies, and factfinder generally may "believe all or any part of the testimony of any witness and disregard all or any part of the testimony of any witness") (quoting *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 774–75 (Tex. 2003)).

If we conclude that the challenged findings are supported by legally and factually sufficient evidence, we proceed to the second step in our review: determining whether the juvenile court abused its discretion in ultimately waiving its jurisdiction and transferring the case. *Bell*, 649 S.W.3d at 887. A court abuses its discretion when it acts arbitrarily or without reference to any guiding rules and principles. *Id.* A juvenile court does not abuse its discretion merely because it bases its decision on conflicting evidence. *Id.*; *see also In re A.M.*, 577 S.W.3d at 659 ("As

with any decision that lies within the trial court's discretion, the question is not whether we might have decided the issue differently.").

## B. Governing Law

Once a child who is the subject of delinquency proceedings has turned eighteen, Family Code section 54.02(j) governs the juvenile court's waiver of its jurisdiction and transfer to criminal district court. *See Ex parte Thomas*, 623 S.W.3d 370, 377–78 (Tex. Crim. App. 2021); *In re A.M.*, 577 S.W.3d at 657–58. Section 54.02(j) requires proof that the child was within certain specified age ranges when the child allegedly engaged in the delinquent conduct, and the age range differs depending on the severity of the conduct. TEX. FAM. CODE § 54.02(j)(2). When, as here, the offense alleged constitutes a first-degree felony other than murder, the child must have been "14 years of age or older and under 17 years of age at the time" of the offense. *Id.* § 54.02(j)(2)(B); *see* TEX. PENAL CODE § 22.021(e) (providing that aggravated sexual assault offense is first-degree felony).

## C. Analysis

The State filed a delinquency petition in each of the two underlying cases alleging that Wade "unlawfully, intentionally and knowingly cause[d] the anus of [Annie], a person younger than fourteen years of age, to contact the sexual organ of [Wade]." The petitions differed only in the date of the offense alleged in each petition: the first petition alleged that the conduct occurred shortly before Wade's

14

seventeenth birthday, while the second petition alleged that the conduct occurred shortly after Wade's fourteenth birthday.

The parties agree that these petitions allege conduct constituting the first-degree felony offenses of aggravated sexual assault. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(iv), (a)(2)(B), (e). Therefore, for the juvenile court to waive its jurisdiction and transfer these cases to a criminal district court under section 54.02(j)(2)(B), the State bore the burden to persuade the court by a preponderance of the evidence that Wade was "14 years of age or older and under 17 years of age at the time" he allegedly committed the two first-degree felony offenses. *See* TEX. FAM. CODE § 54.02(j)(2)(B).

The juvenile court ultimately entered an order in each case waiving its jurisdiction and transferring Wade to criminal district court. Both orders included the following finding: "Respondent [Wade] was 14 years or older but under 17 years of age at the time he/she is alleged to have committed this offense . . . ." Wade challenges this finding in each order.

As stated above, the evidence admitted at the certification hearing included several documentary exhibits and the testimony of a single witness. As Wade acknowledges on appeal, the evidence described two specific incidents of alleged aggravated sexual assault involving anal contact, as alleged in the petitions, and

15

multiple additional instances of the same conduct that were generally described.[2]

Wade primarily challenges the sufficiency of the evidence to support the finding that he was at least fourteen years old but under seventeen for any two of these incidents as alleged in the two petitions.

### 1. First Alleged Incident

In her forensic interview, Annie described the first time Wade sexually assaulted her. As discussed above, she said that Wade was visiting her house when he called her into a bedroom purportedly to "have a talk" with her. Instead, Wade took off both of their clothes and sexually assaulted her by penetrating her anus with his penis. Annie heard her cousin, Lanie, knocking on the bedroom door from outside in the hallway. Wade gave Annie a game to play on his cell phone to stop her crying. Afterwards, Wade made Annie wait outside while he brought Lanie into the bedroom, closed the door, and performed the same acts against Lanie.

---

[2] On appeal, Wade contends in a footnote that the juvenile court was limited to considering his age only during the specific conduct alleged in the petitions—that is, that Wade "cause[d] the anus of [Annie] . . . to contact the sexual organ of [Wade]"—and not his age during the alleged extraneous offenses not involving anal contact. *See* TEX. FAM. CODE § 54.02(j)(2)(B) (requiring proof that child alleged to have engaged in delinquent conduct was "14 years of age or older and under 17 years of age at the time the person is alleged to have committed . . . a felony of the first degree other than" murder). We need not decide this sub-issue, however, because our decision does not depend on evidence of Wade's age during conduct other than that alleged in the State's petitions. *See* TEX. R. APP. P. 47.1.

Concerning the timing of this incident, both Annie and Lanie had difficulty remembering exactly when the incident occurred. They discussed the incident during their forensic interviews, which were conducted more than four years after the last alleged incident of sexual assault and longer still after the first alleged incident. Annie believed that Wade was fifteen when this first incident occurred, and Lanie likewise believed that Wade was fourteen or fifteen at the time. In the initial report of the incident, Lanie's mother reported that Lanie had said the incident happened in 2015.

Delforge testified at the certification hearing that he concluded that Wade was fourteen or fifteen when the first incident happened. Although he acknowledged that some evidence indicated Wade had not yet turned fourteen at the time of the first incident, Delforge explained that he concluded Wade had turned fourteen based on "the things that were said the most" by the girls and the things "that match[ed] up the most." He expressly based his conclusion of Wade's age on his investigation, including the girls' forensic interviews, their statements during their medical examinations, and their mothers' reports to Delforge.

Generally, we would conclude that this constitutes more than a scintilla of evidence supporting the juvenile court's implied finding that Wade was at least fourteen but under seventeen during this first alleged incident. *See Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659. Wade contends, however, that our legal

sufficiency review must consider certain evidence that is contrary to the finding because a reasonable factfinder could not disregard it. *See Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659. Wade argues that this contradictory evidence was "overwhelming" and "demonstrated unequivocally" that he was under fourteen during the first alleged incident.

Wade relies on the following evidence. First, although Annie stated that Wade was fifteen when the first incident happened, she also stated that it occurred before she started pre-kindergarten. On cross-examination, Delforge acknowledged that children typically start kindergarten when they are five or six years old, and Annie would have been an additional year younger when she began pre-kindergarten. In the probable cause statement, Delforge stated that "[Wade] would have been under 14 years old when [Annie] began preschool." Delforge conceded that the first alleged incident could have occurred before Wade turned fourteen years old.

Annie also stated that the first incident occurred when Wade's brother, Michael, lived at Annie's house. Annie's mother told Delforge that Michael lived with her family when he was in fifth grade to seventh grade and that Michael was eighteen months younger than Wade. Although no evidence was admitted showing the ages that children generally attend fifth, sixth, and seventh grades, Wade contends on appeal that he would have been under fourteen when Michael was in fifth, sixth, and seventh grades.

18

Lanie also stated that she and Annie believed the incident occurred when they were five or six years old, which was before Wade turned fourteen. Lanie further stated that she searched the internet for the game the girls played on Wade's cell phone during the first alleged sexual assault, which involved both girls, and she discovered that the game was released in 2012 or 2013, indicating that the sexual assault occurred after this time. Wade contends he was not yet fourteen in 2012 or 2013.

We agree with Wade that a reasonable factfinder could not disregard at least some of this evidence. *See Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659. To be sure, some of this evidence—particularly that of children's ages generally when they attend pre-kindergarten or fifth through seventh grades—is speculative, and it offers little aid in ultimately determining Wade's age at the time. However, all the contrary evidence Wade relies on is consistent with a conclusion that the first alleged incident occurred in 2012 or 2013 when the girls were about five or six years old and before Wade turned fourteen. This evidence is no less persuasive that Wade was under fourteen than the evidence that Wade was at least fourteen. We thus conclude that a reasonable factfinder could not disregard this evidence.

Nevertheless, we disagree with Wade that this body of evidence was "overwhelming" and "demonstrated unequivocally" that he was under fourteen when the first alleged incident occurred. Wade's arguments on appeal focus on

19

discrepancies in the girls' estimates of the date of the first alleged sexual assault. Despite these discrepancies, however, Delforge testified that he concluded Wade had turned fourteen by the time of the first alleged incident. He testified about his training in investigating such allegations, and he stated that his conclusion was based on his investigation, specifically the parts of Annie's and Lanie's statements in their forensic interviews that "were said the most" and "that match[ed] up the most." Delforge acknowledged and considered the discrepancies in the girls' timeline, but he explained that "[i]t's an estimation of a date provided by a 12 year old complainant trying to remember something that happened when she was a younger child."

As factfinder, the juvenile court was sole judge of Delforge's credibility and the weight to give his testimony. *See Anderson*, 550 S.W.3d at 616; *Bell*, 649 S.W.3d at 896. Delforge's conclusion about Wade's age is supported by both girls' estimates that Wade was fourteen or fifteen years old at the time. The juvenile court could choose to believe Delforge's conclusion about Wade's age at the time of the first alleged incident, and the juvenile court alone was tasked with weighing the testimony and resolving any inconsistencies in it. *See Anderson*, 550 S.W.3d at 616; *Bell*, 649 S.W.3d at 896.

Moreover, we note that the State's burden was to persuade the juvenile court by a preponderance of the evidence, which is a far less stringent standard than

20

beyond a reasonable doubt. *See In re A.M.*, 577 S.W.3d at 658; *In re A.B.*, 2019 WL 983751, at *1. Delforge's testimony about the conclusions he reached following his investigation satisfies the State's burden in this case.

On appeal, Wade does not cite to any legal authority supporting his position that the contrary evidence in this case renders the finding of his age legally insufficient. As the State points out, however, several of our sister courts of appeals have concluded that "incomplete and contradictory recollections" and conflicting evidence of a delinquency respondent's age at the time of an offense does not render a finding of the respondent's age insufficient. *See In re G.O.*, No. 05-19-01429-CV, 2020 WL 1472218, at *5 (Tex. App.—Dallas Mar. 26, 2020, no pet.) (mem. op.) (holding that evidence admitted at certification hearing was legally and factually sufficient to support finding of respondent's age at time of alleged offense despite conflicting evidence because "factual discrepancies were for the juvenile court to resolve"); *In re A.B.*, 2019 WL 983751, at *6 (holding that complainant's "incomplete and contradictory recollections" and forensic interviewer's testimony concerning determination of respondent's age constituted legally and factually sufficient evidence of respondent's age at time of alleged aggravated sexual assault). We therefore hold that the evidence was legally sufficient to support the juvenile court's implied finding that the first alleged incident occurred when Wade was at

21

least fourteen years old but under seventeen. *See Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659.

In addition to his legal sufficiency challenge, Wade also argues that (1) the evidence is factually insufficient to support this finding; and (2) the juvenile court abused its discretion by ultimately waiving its jurisdiction and transferring this case to criminal district court. Both arguments rely on Wade's prior arguments concerning the legal sufficiency of the evidence. Wade offers no separate analysis or legal authority supporting these additional arguments.

We conclude that the evidence is factually sufficient to support the finding and that the juvenile court did not abuse its discretion in ultimately waiving jurisdiction and transferring the case. As discussed above, Delforge's testimony and parts of the girls' statements support the finding. The juvenile court was the sole judge of Delforge's credibility, and the court alone could choose which parts to believe and resolve any inconsistencies. *See Anderson*, 550 S.W.3d at 616; *Bell*, 649 S.W.3d at 896. We conclude that the implied finding of Wade's age when the first alleged incident occurred does not conflict with the great weight and preponderance of the evidence so as to be clearly wrong or unjust. *See Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659. We hold that the evidence is factually sufficient to support the finding.

Furthermore, because the evidence is legally and factually sufficient to support the finding, and because Wade raises no additional arguments establishing that the juvenile court abused its discretion, we hold that the court did not abuse its discretion in ultimately waiving its jurisdiction and transferring the case based on conduct allegedly occurring in February 2014. *See Bell*, 649 S.W.3d at 887 (stating that juvenile court does not abuse its discretion merely because decision is based on conflicting evidence).

## 2. Second Alleged Incident and Multiple Additional Alleged Incidents

Annie also described in detail a second alleged incident of sexual assault involving anal contact, as well as multiple other incidents involving the same conduct that were generally described. Regarding the second specific incident, Annie stated that she was in her bedroom one day while family members were downstairs. Wade came into her room, shut and locked the door, removed her clothes, and sexually assaulted her. Wade stopped when someone walked up the stairs. When describing this incident, Annie said that Wade did "the same thing" he did to her before—which she explained meant he put his "thing" inside her butt— and she said this incident occurred after the first incident. At the certification hearing, Delforge briefly summarized this incident, and his offense report describing the incident was admitted into evidence.

In addition to this second alleged incident, Annie reported that there were multiple incidents of sexual abuse involving anal sex—she specifically said "[a] lot more" than three. She also said that she was between eight and ten years old when the sexual abuse stopped, at which time Wade would have been between sixteen and eighteen years old. But Annie acknowledged that she could not clearly remember the dates.

In his probable cause statement, Delforge stated that the last time "[Wade] penetrated her [Annie's] anus with his penis, occurred when she was approximately 8 years old," at which time Wade would have been sixteen years old. At the hearing, Delforge acknowledged the possibility that some of these incidents may have occurred after Wade turned seventeen, but he concluded that the sexual abuse stopped in "2017, which would match [Annie] saying she was about 8 years old." Wade turned seventeen in February 2017. Delforge based this conclusion on "the different statements of both girls" and "the things that were said the most, that match[ed] up the most[.]" He stated the same conclusion on re-direct examination.

On appeal, Wade argues that Delforge did not testify about when this second incident occurred, Annie did not remember how old she was, and therefore the evidence was insufficient to support the finding that Wade was in the requisite age range during this incident. We disagree.

24

Annie's statement that Wade did "the same thing" during the second alleged incident as he did during the first alleged incident indicates that the second incident occurred after the first incident. We have already concluded that the evidence is sufficient to establish that Wade was at least fourteen years old during the first alleged sexual assault, and therefore a scintilla of evidence exists that he was at least fourteen during the second alleged sexual assault. *See id.* Likewise, because the multiple additional incidents also occurred after the first incident, there is a scintilla of evidence that Wade was at least fourteen when these incidents occurred as well. *See id.* Furthermore, Delforge concluded that the sexual abuse ended in 2017 before Wade turned seventeen years old. This is a scintilla of evidence that the second alleged incident and the multiple additional alleged incidents also occurred before Wade turned seventeen.

As the factfinder, the juvenile court was the sole judge of Delforge's credibility and the weight to give his testimony. *See Anderson*, 550 S.W.3d at 616; *Bell*, 649 S.W.3d at 896. The juvenile court alone could resolve any inconsistencies in the evidence. *See Bell*, 649 S.W.3d at 896. We conclude that more than a scintilla of evidence exists to support the implied finding that Wade was at least fourteen but under seventeen for the second alleged incident and the multiple additional incidents that allegedly occurred within the requisite age range. *See id.* at 887; *In re A.M.*, 577

25

S.W.3d at 659. We therefore hold that the evidence is legally sufficient to support the finding.

As with his arguments concerning the first alleged incident, Wade's factual sufficiency challenge and abuse of discretion challenge rely solely on his legal sufficiency arguments. We have already determined that the evidence is legally sufficient to support the implied finding concerning Wade's age during the second alleged incident and the multiple additional alleged incidents. We conclude that the implied finding does not conflict with the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *See Bell*, 649 S.W.3d at 887; *In re A.M.*, 577 S.W.3d at 659. We therefore hold that the evidence is factually sufficient to support the finding. We further hold that the juvenile court did not abuse its discretion in ultimately waiving its jurisdiction and transferring the case to criminal district court. *See Bell*, 649 S.W.3d at 887.

We overrule Wade's sole issue in both appeals.

## Conclusion

We affirm the orders of the juvenile court waiving jurisdiction and transferring Wade to criminal district court for criminal proceedings.


April L. Farris
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.