**Affirmed and Memorandum Opinion filed December 21, 2023**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00529-CV

## TIFFANY CANNON, Appellant

## V.

## HARRISON J. FENTON, Appellee

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2015-51483**

## MEMORANDUM OPINION

This is a personal injury case arising from a motor vehicle accident. Appellant Tiffany Cannon sustained injuries after the vehicle she was operating was struck by a vehicle operated by appellee, Harrison J. Fenton. The parties proceeded to trial, and the jury returned a verdict favoring Cannon.[1] Cannon appealed and challenges

---

[1] Cannon also brought claims as next friend of her minor child. She does not challenge the jury's damages awards for the minor.

the sufficiency of the evidence in several respects. We affirm.

## *Background*

On March 13, 2015, Cannon was involved in a motor vehicle accident. Cannon testified that she was in stop-and-go traffic and was stopped for a short while before her vehicle was struck from behind by a vehicle operated by Fenton. The impact pushed Cannon's vehicle into the vehicle in front of her. Cannon's minor son was in the backseat but did not sustain any injuries. Fenton acknowledged that he was very sleepy and accepted full responsibility for the accident.

Cannon declined ambulance transportation at the scene. Two days later, she traveled on her own to Tomball Regional Medical Center complaining of neck and back pain. She was given two prescriptions and discharged with patient educational materials. The following day, Cannon went to North Cypress Medical Center complaining of injuries she sustained in the motor vehicle accident. A CT scan was performed on Cannon's abdomen, pelvic area, and head. The results were normal. A physical exam was also performed. The treating physician identified general muscle tenderness throughout Cannon's back but did not identify any CVA, vertebral, or spinal tenderness. Cannon was given several prescriptions and discharged with instructions to follow up with her primary care physician.

In April 2015, Cannon went to Dr. Remi Nader, a board-certified neurosurgeon, complaining of pain in her lower back and neck. Dr. Nader performed a physical exam. All the systems reviewed were within normal limits, and Cannon did not appear in apparent distress. He ordered an MRI of the cervical and lumbar spine for further evaluation and prescribed additional medication. After reviewing the imaging of Cannon's spine, Dr. Nader found two herniations in her lumbar spine. He recommended physical therapy, medication treatment, and epidural injections. Dr. Nader's assessment notes indicated that Cannon may need a cervical fusion in

the future if her symptoms did not improve with conservative care.

In May 2015, Cannon began chiropractic therapy. The following month, she received lumbar and cervical epidural steroid injections. Cannon was involved in a subsequent automobile accident in October 2015, but Dr. Nader opined that this accident did not aggravate Cannon's neck or back condition. Cannon continued treatment under Dr. Nader. In May 2016, Cannon still complained of neck pain. Dr. Nader recommended a second epidural injection. The lumbar epidural steroid injection was performed in June 2016. About a year later, Cannon began physical therapy in April 2017.[2] Based on the therapy notes, Cannon showed minimal progress. In August 2021, Cannon received a cervical epidural steroid injection, as well as a trigger point injection.

Dr. Nader testified that Cannon's injuries were all in reasonable medical probability related to the March 2015 occurrence. He also opined that Cannon would require two or three surgeries in the future. The first surgery Dr. Nader described was an anterior cervical discectomy and fusion at the C5-C6 level. Because Cannon would lose flexion in her cervical spine from the first surgery, Dr. Nader explained that Cannon would also require another surgery at the C6-C7 level. Dr. Nader estimated that a reasonable life expectancy for Cannon was 80 years old and believed in reasonable medical probability that Cannon would require additional surgeries throughout the remainder of her expected life. According to Dr. Nader, each surgery would cost at least $200,000.

Dr. Kenneth Palmer, an orthopedic spine surgeon retained by Fenton, briefly

[2] The record is not clear when Cannon began physical therapy. Cannon testified that she stopped physical therapy in August 2015 when she found out she was pregnant with her daughter. But, billing records admitted at trial indicate that Cannon attended physical therapy at Action Physical Therapy from April 2017 to March 2018 and Burhani Physical Therapy from August 2020 to October 2020.

testified at trial. Dr. Palmer agreed that Cannon suffered cervical, thoracic, and lumbar strains as a result of the March 2015 occurrence. Nevertheless, he believed the typical treatment for Cannon's injuries was physical therapy several times a week for several months along with medication. Contrary to Dr. Nader's recommendations, Dr. Palmer did not believe epidural injections or surgery were appropriate for Cannon's injuries.

The case was tried to a jury, and the only issue submitted was whether the March 2015 occurrence caused the damages incurred by Cannon. On the question of damages, the jury awarded Cannon the following amounts:

a. Physical pain sustained in the past.

Answer: 15,120.00

b. Mental anguish sustained in the past.

Answer: 15,120.00

c. Physical pain that, in reasonable probability, Tiffany Cannon, will sustain in the future.

Answer: 0.00

d. Mental anguish that, in reasonable probability, Tiffany Cannon, will sustain in the future.

Answer: 0.00

e. Physical impairment, Tiffany Cannon, sustained in the past.

Answer: 5,000.00

f. Physical impairment that, in reasonable probability, Tiffany Cannon, will sustain in the future.

Answer: 0.00

g. Medical care expenses Tiffany Cannon paid or incurred in the past.

Answer: 67,817.35

h. Medical care expenses that, in reasonable probability, Tiffany Cannon, will incur in the future.

Answer: 0.00

i.  Loss of earnings Tiffany Cannon, sustained in the past.

Answer: 10,500.00

j.  Loss of earning capacity that, in reasonable probability, Tiffany Cannon, will sustain in the future.

Answer: 0.00

Thus, the jury awarded Cannon a total of $113,557.35 for past pain, mental anguish, loss of earning capacity, and medical expenses but awarded her nothing for future pain, mental anguish, medical care expenses, or loss of earning capacity. Dissatisfied with the jury's damages award, Cannon filed a motion for new trial, alleging that the jury's verdict was not supported by legally or factually sufficient evidence. The trial court denied the motion, and this appeal followed.

## *Discussion*

On appeal, Cannon raises six issues. As presented, Cannon alleges that: (1) the jury disregarded uncontroverted expert testimony and awarded an "arbitrary number" in damages, (2) the award of $67,817.35 for past medical expenses was not supported by legally sufficient evidence, (3) the award of $67,817.35 for past medical expenses was not supported by factually sufficient evidence, (4) the jury disregarded uncontroverted expert testimony when it did not award future damages, (5) the jury's zero-damage award for future medical expenses and non-economic damages was not supported by legally sufficient evidence, and (6) the jury's zero-damage award for future medical expenses and non-economic damages was not supported by factually sufficient evidence.

## *Standards of Review*

When reviewing the legal sufficiency of the evidence, the reviewing court must consider all evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168

S.W.3d 802, 822 (Tex. 2005). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Univ. Gen. Hosp., L.P. v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 551 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The amount of damages to which a plaintiff is entitled is generally a question of fact for the jury to decide. *Garza de Escabedo v. Haygood*, 283 S.W.3d 3, 6 (Tex. App.—Tyler 2009), *aff'd*, *Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011). Generally, a jury has great discretion in considering the issue of damages, and its findings are entitled to great deference from an appellate court. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) ("[T]he trier of fact is afforded considerable discretion in evaluating opinion testimony on the issue of damages."). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *See Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within [a] zone of reasonable disagreement." *City of Keller*, 168 S.W.3d at 822.

When reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When a party attacks the factual sufficiency of an adverse finding on which it had the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *Id.* "If the jury's failure to award damages or the amount of damages awarded is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscious, or

clearly demonstrate bias, then a new trial would be required." *Golden Eagle Archery*, 116 S.W.3d at 773.

### *Past Medical Expenses*

As her first issue, Cannon argues that $67,817.35 for her past medical expenses was an "arbitrary number." Cannon suggests that the jury disregarded uncontroverted expert medical testimony in reaching this award. In her second and third issues, Cannon apparently attacks the legal and factual sufficiency of the evidence to support the jury's award of $67,817.35 for her past medical expenses. According to Cannon, the billing records, medical affidavits in compliance with section 18.001 of the Civil Practice and Remedies Code, as well as Dr. Nader's testimony supported medical expenses of approximately $113,000. Because these issues raise similar arguments, we analyze them together. We, however, note that Cannon does not cite the correct standard of review for her complaints. As discussed, when challenging the legal sufficiency of an adverse finding on an issue on which Cannon had the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue, but when challenging the factual sufficiency of an adverse finding on which she had the burden of proof, she must demonstrate on appeal that the finding is against the great weight and preponderance of the evidence. *See Dow Chem.*, 46 S.W.3d at 241–42. We therefore analyze Cannon's issues with the appropriate standards of review.

A claim for past medical expenses must be supported by evidence that such expenses were reasonable and necessary. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 876 (Tex. 2021) (orig. proceeding); *Whitaker v. Rose*, 218 S.W.3d 216, 223 (Tex.—App. Houston [14th Dist.] 2007, no pet.). The plaintiff must produce evidence from which the jury may reasonably infer that the claimed damages resulted from the defendant's conduct. *Haygood*, 356 S.W.3d at 399; *Texarkana Mem'l Hosp., Inc. v.*

7

*Murdock*, 946 S.W.2d 836, 838 (Tex. 1997). To do so, the plaintiff must present expert testimony at trial or an uncontroverted affidavit complying with the procedures outlined in section 18.001 of the Civil Practice and Remedies Code. *In re Chefs' Produce of Hous., Inc.*, 667 S.W.3d 297, 301 (Tex. 2023) (orig. proceeding) (per curiam); *see also* Tex. Civ. Prac. & Rem. Code § 18.001(b).

Section 18.001(b) provides that

> [u]nless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

Tex. Civ. Prac. & Rem. Code § 18.001(b). An uncontroverted affidavit is sufficient, but not conclusive, evidence that medical expenses are reasonable and necessary. *Chefs' Produce*, 667 S.W.3d at 301 (citing *Allstate*, 622 S.W.3d at 881). However, such an affidavit is not sufficient to establish that the defendant caused the injuries for which the medical expenses were paid or incurred. *See Gunn v. McCoy*, 489 S.W.3d 75, 102 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 554 S.W.3d 645 (Tex. 2018).

To prove her past medical expenses, Cannon relied on billing records and medical affidavits pursuant to Civil Practice and Remedies Code section 18.001(b). Billing records submitted by Cannon demonstrated that she incurred approximately $113,000 in medical expenses from March 2015 to August 2021. Almost all of the billing records submitted by Cannon were accompanied by medical affidavits. Fenton did not serve Cannon with a counteraffidavit to controvert the claims reflected by the medical affidavits. *See* Tex. Civ. Prac. & Rem. Code § 18.001(e) ("A party intending to controvert a claim reflected by the affidavit must serve a copy

of the counteraffidavit on each other party. . . .”). But, medical affidavits are not conclusive as to the amount of damages and do not establish the requisite causal link between the March 2015 occurrence and Cannon's medical expenses. *See Gunn*, 489 S.W.3d at 102.

To establish the causal nexus between the March 2015 occurrence and her medical expenses, Cannon primarily relied on Dr. Nader's testimony. Dr. Nader testified that he reviewed Cannon's past medical expenses and determined that they were reasonable and necessary as a result of the March 2015 occurrence. Cannon asserts that the jury's damages award of $67,817.35 for past medical expenses was "arbitrary" because Dr. Nader's testimony was uncontroverted, and Dr. Palmer did not challenge Dr. Nader's valuation of Cannon's medical expenses.

Yet, Cannon's argument is not supported by the record. Indeed, Dr. Nader's testimony was not uncontroverted because Fenton offered the testimony of Dr. Palmer, a retained medical expert. Dr. Palmer did not directly opine on the medical expenses incurred by Cannon or challenge Dr. Nader's valuation of Cannon's medical expenses. He did, however, testify that he did not believe epidural injections or surgery were appropriate for Cannon's injuries. According to Dr. Palmer, the standard treatment for Cannon's injuries were medication and physical therapy.

To purportedly challenge the causal nexus between the March 2015 occurrence and Cannon's medical expenses, Fenton also emphasized Cannon's non-compliance with physical therapy. During her testimony, Cannon acknowledged that she had a prior injury in 2012 and did not complete physical therapy because she "didn't feel the need to." She also testified that she began physical therapy after the March 2015 occurrence but stopped right about the time she found out she was pregnant. According to Cannon, since 2015, she attended physical therapy "close to 100 or maybe even a little more." But, the evidence adduced at trial demonstrated

9

that she attended physical therapy a total of 48 times several years after the March 2015 occurrence.

Dr. Nader and Dr. Palmer's testimony also differed on the appropriate treatment for Cannon's injuries. Notwithstanding their differing recommendations, both experts agreed that physical therapy was proper, and the jury heard testimony that Cannon did not comply with the physical therapy recommendations. As a general proposition, the jury may "believe all or any part of the testimony of any witness and disregard all or any part of the testimony of any witness." *Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018) (quoting *Golden Eagle Archery*, 116 S.W.3d at 774–75); *see also City of Keller*, 168 S.W.3d at 819.

The jury could have reasonably concluded that Cannon failed to meet her burden to prove that all of the medical expenses she incurred were the result of the March 2015 occurrence and were reasonable and necessary. *See Gunn*, 554 S.W.3d at 664–65 ("[I]t is the province of the jury to determine which evidence to credit. . . ."). "[W]e defer to the jury's reasonable credibility determinations." *Gen. Growth Props., Inc. v. Prop. Tax Mgmt., Inc.*, 614 S.W.3d 386, 390 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

In sum, Cannon did not conclusively establish, as a matter of law, that the entire $113,000 she sought for past medical expenses was reasonable and necessary and incurred as a result of the occurrence, nor did she establish that the jury's award of $67,817.35 was so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscious, or clearly demonstrate bias. *Golden Eagle Archery*, 116 S.W.3d at 773.

Accordingly, we overrule Cannon's first, second, and third issues.

### *"Uncontroverted" Expert Testimony*

In her fourth issue, Cannon argues that the jury disregarded uncontroverted expert testimony when it returned a zero-damage award for her future medical expenses. Cannon suggests that the jury ostensibly rejected Dr. Palmer's recommendations; therefore, Dr. Nader's testimony that Cannon would continue to suffer from her injuries and require future surgeries was uncontroverted. We disagree.

As discussed above, Cannon's argument regarding Dr. Nader's uncontroverted testimony is not supported by the record. While Dr. Nader provided substantial testimony regarding the impact of Cannon's injuries and the necessity for future surgeries, Dr. Palmer opined that future medical expenses were unlikely since Cannon's injuries did not require epidural injections or surgery. As mentioned, Dr. Palmer believed that medication and physical therapy was sufficient for Cannon's injuries. Even if Dr. Nader's testimony was uncontroverted, "[j]urors may disregard . . . uncontradicted and unimpeached testimony from disinterested witnesses," so long as it is reasonable. *City of Keller*, 168 S.W.3d at 820.

In this case, the jury could have disregarded all or any part of Dr. Nader's testimony and believed all or any part of Dr. Palmer's testimony, and we defer to the jury's reasonable credibility determinations. *See Anderson*, 550 S.W.3d at 616; *Gen. Growth Props.*, 614 S.W.3d at 390.

Accordingly, we overrule Cannon's fourth issue.

### *Future Medical Expenses, Mental Anguish, and Physical Impairment*

In her fifth and sixth issues, Cannon complains that the jury's failure to award her any future damages for medical expenses, mental anguish, and physical impairment was not supported by legally and factually sufficient evidence. According to Cannon, the jury "clearly rejected Dr. Palmer's opinion," and the only

remaining evidence established that she would require multiple surgeries in the future. Because these issues challenge the jury's zero-damage awards for future damages, we analyze them together. Again, we note that Cannon does not cite the correct standards of review for her complaints. As before, we analyze Cannon's issues with the appropriate standards. *See Dow Chem.*, 46 S.W.3d at 241–42 (providing the standards of review when a party attacks the legal and factual sufficiency of an adverse finding on which they had the burden of proof).

With respect to recovery of future damages, Texas follows the reasonable-probability rule. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 654 (Tex. 1999). To meet the reasonable-probability test, the plaintiff must: (1) present evidence that, in reasonable probability, she will incur damages in the future, and (2) prove the probable reasonable amount of the future damages. *Id.* at 654–55. When presented with an argument that a jury's failure to award damages is against the great weight and preponderance of the evidence, we must consider and weigh all of the evidence to determine whether it is sufficient to support the verdict. *See Golden Eagle Archery*, 116 S.W.3d at 761; *see also Gregory v. Chohan*, 670 S.W.3d 546, 557 (Tex. 2023) (holding that because courts "must insist that every aspect of our legal system . . . yields rational and non-arbitrary results based on evidence and reason[,]" the amount of damages awarded by a jury "must be based on evidence").

## A. Future Medical Expenses

In order to recover for future medical expenses, a plaintiff must provide evidence showing a reasonable probability that the medical expenses will be incurred in the future, and the probable cost of such expenses. *See Gunn*, 489 S.W.3d at 112. Although the preferred method to prove future medical expenses is through expert medical testimony, "no precise evidence is required to support an award for future medical costs." *Id.* Like other types of personal injury damages, it is within

the jury's sound discretion to determine what amount, if any, to award in future medical expenses. *Id.* This standard of review does not mean, however, that a reviewing court will uphold a jury award for future medical expenses when there is no evidence to support the finding. *Id.*

To prove that she was entitled to future damages for medical expenses, mental anguish, and physical impairment, Cannon relied on the testimony of Dr. Nader. Dr. Nader testified that Cannon would require two or three surgeries in the future, and each surgery would cost at least $200,000. Dr. Nader testified that Cannon was too young to have surgery now but believed that it was more likely than not that she would need surgery at some point in the future. Cannon contends that Dr. Nader's "finding of a more serious lasting injury . . . required a finding of future damages."

Notwithstanding Cannon's position, Dr. Nader's testimony did not require a finding for future damages. First, Dr. Nader did not provide a reasonable timeframe for the future surgeries that Cannon apparently needed. According to Dr. Nader, a reasonable life expectancy for Cannon was 80 years old. Because she was already 31 years old, he testified that she would need surgery at some point in the remaining 49 years of her life. But, he did not offer any testimony concerning when the surgeries would need to happen within those 49 remaining years. Second, the jury heard Dr. Palmer's testimony that surgery was not appropriate for Cannon's injuries.

When evidence conflicts, it is the role of the jury to evaluate the credibility of the witnesses and reconcile any inconsistences. *Anderson*, 550 S.W.3d at 616. In light of this conflicting testimony, the jury may "believe all or part of the testimony of any witness and disregard all or part of the testimony of any witness." *Id.* The jury could have reasonably concluded that Cannon failed to show a reasonable probability that medical expenses would be incurred in the future. Therefore, we cannot say that the jury's zero-damage award for future medical expenses is so

13

against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscious, or clearly demonstrate bias. *Golden Eagle Archery*, 116 S.W.3d at 773.

## B. Future Mental Anguish and Physical Impairment

Cannon also challenges the jury's zero-damage award for future mental anguish and physical impairment. However, she does not cite to authority relevant to future mental anguish and physical impairment nor does the record support a reasonable probability that she will incur these damages in the future. *Anderson*, 550 S.W.3d at 619 ("To recover damages for future mental anguish, the plaintiff must further demonstrate a reasonable probability that compensable mental anguish will persist."); *Pipgras v. Hart*, 832 S.W.2d 360, 366 (Tex. App.—Fort Worth, 1992, writ denied) ("To recover damages for future physical impairment, one must have proof his physical impairment extends beyond any impediment to his earning capacity and beyond pain and suffering so that it produces a distinctly separate loss."). Thus, any such challenge is, therefore, waived. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (providing that failure to cite legal authority results in waiver).

In sum, the jury's finding of zero-damages for Cannon's future medical expenses, mental anguish, and physical impairment is supported by the record before us. Accordingly, we overrule Cannon's fifth and sixth issues.

### *Conclusion*

We affirm the judgment of the trial court.

/s/ Frances Bourliot
Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.